ROBINSON, J.
**588 The principal issue in this certified appeal is whether the thirty day deadline provided by Practice Book § 11-21,[1] which governs motions for attorney's fees, is directory rather than mandatory, thus affording a trial court discretion to entertain untimely motions. The plaintiff, Meadowbrook Center, Inc., a nursing facility, appeals, upon our grant of its petition for certification,[2] from the judgment of the Appellate Court reversing the judgment of the trial court, which denied as untimely a motion filed by the defendant, Robert Buchman, seeking an award of attorney's fees pursuant to General Statutes § 42-150bb.[3]
**589 *554 Meadowbrook Center, Inc. v. Buchman , 169 Conn. App. 527, 529, 151 A.3d 404 (2016). On appeal, the plaintiff claims that (1) the thirty day deadline provided by Practice Book § 11-21 is mandatory and that, therefore, the Appellate Court improperly concluded that the trial court was required to exercise discretion in deciding whether to entertain the defendant's untimely motion, and (2) even if the trial court had discretion to entertain an untimely motion for attorney's fees, the defendant's motion in the present case was barred as a matter of law. We disagree and, accordingly, affirm the judgment of the Appellate Court.
The Appellate Court's opinion sets forth the following undisputed facts and procedural history relevant to our consideration of the issues presented in this appeal. "The plaintiff ... brought an action against the defendant based on contract and promissory estoppel relating to its care of the defendant's mother. The admission agreement executed by the plaintiff and the defendant, as a responsible party, contained a clause providing for the responsible party to pay the cost of collection, including reasonable attorney's fees, in the event an overdue account is referred to an agency or attorney for collection. Following a trial to the court, Hon. Robert J. Hale , judge trial referee, judgment was rendered for the plaintiff in the sum of $47,561.15 with attorney's fees to be decided postjudgment.
"On appeal, however, [the Appellate Court] reversed the judgment and remanded the case to the trial court with direction to render judgment in favor of the defendant. Meadowbrook Center, Inc. v. Buchman , 149 Conn. App. 177, 212, 90 A.3d 219 (2014). The order from [the Appellate Court] was dated April 8, 2014. Thereafter, on April 30, 2014, the court, Robaina, J. , rendered judgment **590 for the defendant. The defendant then submitted a bill of costs on May 16, 2014, and, on June 4, 2014, the thirty-fifth day after judgment, the defendant filed a motion for attorney's fees and costs. On January 29, 2015, the court, Wahla, J. , conducted a hearing on the defendant's motion in which he claimed attorney's fees of $74,918.70 and costs of $1337.38. On April 7, 2015, the court issued its decision denying the defendant's motion for attorney's fees on the basis that the motion was not timely. Rejecting the defendant's argument that attorney's fees pursuant to § 42-150bb are a component of damages and, therefore, not subject to the time limits of Practice Book § 11-21, the court stated: 'Because I conclude that attorney's fees were not a component of damages, the defendant's motion for attorney's fees and costs [is] not timely, hence I am constrained to agree with the plaintiff. The defendant's motion is hereby denied.'
"Following the court's ruling, the defendant filed a motion for reconsideration and reargument on April 17, 2015. In this motion, the defendant argued, inter alia, that *555 the court incorrectly had failed to rule whether the time limit set forth in Practice Book § 11-21 is mandatory or directory. The defendant alleged that he had raised this issue in his memorandum of law in support of attorney's fees and at the hearing on his motion. In response, the plaintiff urged the court [not to] consider the defendant's motion as 'the defendant wants to rehash the same arguments that he already made which were unpersuasive.' By order dated May 12, 2015, Judge Wahla denied the defendant's motion for reconsideration and reargument without comment." Meadowbrook Center, Inc. v. Buchman , supra, 169 Conn. App. at 529-30, 151 A.3d 404.
The defendant appealed from the judgment of the trial court denying his motion for attorney's fees to the Appellate Court, claiming that the deadline contained in Practice Book § 11-21"was directory and, therefore, **591 the [trial] court should have exercised its discretion to permit a filing that was five days late" and that, ultimately, the trial court "should have awarded attorney's fees in light of the mandate of § 42-150bb and the fact that the defendant's delay in filing was reasonable and minimal." Id., at 531, 151 A.3d 404. Guided by this court's interpretation of Practice Book § 2-47 (a), which concerns the scheduling of attorney grievance hearings, in Statewide Grievance Committee v. Rozbicki , 219 Conn. 473, 595 A.2d 819 (1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992), the Appellate Court determined that "the purpose of the timing provision in Practice Book § 11-21 is procedural and intended to facilitate the progress of the case since the timing of such a motion does not go to the essence of the right to reasonable attorney's fees. Second, the purpose of the timing provision in [Practice Book] § 11-21 is to avoid a long period of delay between judgment and a request for attorney's fees.
"In light of the public policy of § 42-150bb to balance the equities between commercial contractors and consumers, the mandate of the statute that attorney's fees be awarded to a consumer who successfully defends a consumer contract claim, we conclude that the timing provision of Practice Book § 11-21 is directory and not mandatory. To hold to the contrary would rigidly exalt form over substance and, in the case of a minor failure to adhere to the rule's timing requirement, would prevent the court from fulfilling the public policy driven mandate of the statute." (Footnote omitted.)
**592 Meadowbrook Center, Inc. v. Buchman , supra, 169 Conn. App. at 538, 151 A.3d 404. The Appellate Court then concluded that the trial court had improperly failed to "exercise its discretion to determine whether strict adherence to the [thirty day deadline set forth in Practice Book § 11-21 ] would 'work surprise or injustice.' Practice Book § 1-8." Meadowbrook Center, Inc. v. Buchman , supra, 169 Conn. App. at 540, 151 A.3d 404. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case "with direction to conduct a hearing on the defendant's motion for attorney's fees ...." Id. This certified appeal followed. See footnote 2 of this opinion.
On appeal, the plaintiff claims that (1) the Appellate Court improperly concluded that the thirty day deadline set forth in Practice Book § 11-21 is directory, and (2) even if that deadline is directory, remand to the trial court is not necessary in the present case because the defendant's untimely motion was barred as a matter of law.
I
We begin with the plaintiff's claim that the Appellate Court's interpretation of Practice Book § 11-21 as directory, thus *556 affording trial judges discretion to entertain motions for attorney's fees filed beyond the thirty day deadline, is "incompatible with the plain meaning of the rule's text" and "contrary to the clear purpose" underlying its adoption by the judges of the Superior Court-namely, responding to "a troubling Appellate Court decision, which [had] held that a five month delay in filing a motion for attorney's fees was reasonable ...." See Oakley v. Commission on Human Rights & Opportunities , 38 Conn. App. 506, 516-18, 662 A.2d 137 (1995), aff'd, 237 Conn. 28, 675 A.2d 851 (1996). The plaintiff argues that the Appellate Court improperly followed Statewide Grievance Committee v. Rozbicki , supra, 219 Conn. at 473, 595 A.2d 819, which had applied principles of statutory construction to a rule of practice, and contends that, "[i]n contrast to legislators, who occasionally use the terms 'shall' and 'may' loosely and in statutory contexts that justify interpreting 'shall' as directory, the judges of the Superior Court know the difference between 'shall' and 'may.' When they use the term 'shall' in [the rules of practice], they must be **593 presumed to use the term in its mandatory sense." The plaintiff emphasizes that a rule of practice setting a deadline for motions for attorney's fees pursuant to statutes that do not contain their own deadlines, such as § 42-150bb, would not undermine the purpose of such statutes. Finally, the plaintiff contends that our analysis of Practice Book § 11-21 in Traystman, Coric & Keramidas, P.C. v. Daigle , 282 Conn. 418, 922 A.2d 1056 (2007) ( Traystman ), and the decision of the Appellate Court in Cornelius v. Rosario , 167 Conn. App. 120, 143 A.3d 611 (2016), "strong[ly] impl[y] ... that the filing deadline is mandatory."
In response, the defendant disagrees with the plaintiff's reading of Traystman and contends that the Appellate Court properly construed Practice Book § 11-21 as directory rather than mandatory. The defendant argues that the judges of the Superior Court promulgated Practice Book § 11-21 to provide structure and guidance to the trial courts, which previously had exercised wide and "amorphous" discretion under Oakley v. Commission on Human Rights & Opportunities , supra, 38 Conn. App. at 516-17, 662 A.2d 137, in determining whether a motion for attorney's fees had been filed within "a reasonable time." Citing Statewide Grievance Committee v. Rozbicki , supra, 219 Conn. at 473, 595 A.2d 819, and observing that rules of practice are interpreted in the same manner as statutes, the defendant relies on our jurisprudence construing statutory deadlines, such as Electrical Contractors, Inc. v. Ins. Co. of the State of Pennsylvania , 314 Conn. 749, 104 A.3d 713 (2014), and contends that the relatively brief deadline contained in Practice Book § 11-21, which lacks any penalty for noncompliance, is directory insofar as it is designed "to secure order, system, and dispatch in the proceedings." Relying on Practice Book § 1-8, the defendant further emphasizes that a strict reading of the thirty day deadline in Practice Book § 11-21 would have the impermissible effect of abrogating **594 the substantive right to attorney's fees provided by § 42-150bb. We agree with the defendant and conclude that the Appellate Court properly construed Practice Book § 11-21 as a directory provision that afforded the trial court discretion to entertain the untimely motion for attorney's fees in the present case.
We begin with the standard of review. "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation.... The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary.... In seeking to determine [the]
*557 meaning [of a statute or a rule of practice, we] ... first ... consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]." (Citation omitted; internal quotation marks omitted.) Disciplinary Counsel v. Elder , 325 Conn. 378, 386, 159 A.3d 220 (2017) ; see, e.g., Disciplinary Counsel v. Parnoff , 324 Conn. 505, 514, 152 A.3d 1222 (2016) ; State v. Heredia , 310 Conn. 742, 755-56, 81 A.3d 1163 (2013) ; see also State v. Cook , 183 Conn. 520, 521-22, 441 A.2d 41 (1981) (seminal case). "If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence ... shall not be considered.... When [the provision] is not plain and unambiguous, we also look for interpretive guidance to the ... history and circumstances surrounding its enactment, to the ... policy it was designed to implement, and to its relationship to existing [provisions] and common law principles governing the same general subject matter .... We recognize that terms [used] are to be assigned their ordinary meaning, unless context dictates otherwise." (Internal quotation marks omitted.) Wiseman v. Armstrong , 295 Conn. 94, 100, 989 A.2d 1027 (2010). Put **595 differently, we follow the "clear meaning" of unambiguous rules, because "[a]lthough we are directed to interpret liberally the rules of practice, that liberal construction applies only to situations in which 'a strict adherence to them [will] work surprise or injustice.' " Pitchell v. Hartford , 247 Conn. 422, 432, 722 A.2d 797 (1999), quoting Practice Book § 1-8.
We now turn to the text of Practice Book § 11-21, which provides: "Motions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. If appellate attorney's fees are sought, motions for such fees shall be filed with the trial court within thirty days following the date on which the appellate court or supreme court rendered its decision disposing of the underlying appeal. Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages." (Emphasis added.)
As a threshold matter, we disagree with the plaintiff's argument that Practice Book § 11-21 is plain and unambiguous, precluding resort to extratextual materials, with respect to whether the Superior Court judges' use of the word "shall" in connection with the thirty day deadline creates a mandatory obligation, thus depriving the trial court of discretion to permit a late filing. See Stewart v. Tunxis Service Center , 237 Conn. 71, 77, 676 A.2d 819 (1996) ("if a statutory time period is mandatory in nature, a showing of prejudice is not necessary to a conclusion that a failure to comply with the time period will invalidate the untimely action"). Seeking guidance from the statutory interpretation process, "our past decisions have indicated that the use of the word shall, though significant, does not invariably create a mandatory duty.... Indeed, we frequently have found statutory duties to be directory, notwithstanding the legislature's use of facially obligatory language such as **596 shall or must.... We therefore look to other relevant considerations, beyond the legislature's use of the term shall, to ascertain the meaning of the statute.
"Our prior cases have looked to a number of factors in determining whether such requirements are mandatory or directory. These include: (1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether the requirement at *558 issue relates to a matter of substance or one of convenience; (4) whether the legislative history, the circumstances surrounding the statute's enactment and amendment, and the full legislative scheme evince an intent to impose a mandatory requirement; (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance." (Citations omitted; footnote omitted; internal quotation marks omitted.) Electrical Contractors, Inc. v. Ins. Co. of the State of Pennsylvania , supra, 314 Conn. at 757-59, 104 A.3d 713.
"The first two factors are addressed to the statutory text. A reliable guide in determining whether a statutory provision is ... mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision.... By contrast, where a statute by its terms imposes some other specific penalty, it is reasonable to assume that the legislature contemplated that there would be instances of noncompliance and did not intend to invalidate such actions.... Furthermore, a requirement stated in affirmative terms unaccompanied **597 by negative words ... generally is not viewed as mandatory." (Citations omitted; internal quotation marks omitted.) Id., at 759, 104 A.3d 713.
In the present case, the language of Practice Book § 11-21 does not specifically invalidate or otherwise penalize motions filed beyond the thirty day deadline. "This lack of a penalty provision or invalidation of an action as a consequence for failure to comply with the statutory directive is a significant indication that the statute is directory." (Internal quotation marks omitted.) Id., at 760, 104 A.3d 713. It also is phrased in affirmative terms, rather than using negative words such as "no later than." See Stewart v. Tunxis Service Center , supra, 237 Conn. at 72 n.1 and 78, 676 A.2d 819 ( General Statutes § 31-300, requiring Workers' Compensation Commission to send written copy of award " '[a]s soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion' " has "negative terminology [that] suggests that [legislature] intended [it] to be mandatory" [emphasis altered] ). Finally, that the language of the rule only uses the word "shall," and does not also contain the "more permissive" word "may," further suggests that the use of the word "shall" therein is directory. See, e.g., Lostritto v. Community Action Agency of New Haven, Inc. , 269 Conn. 10, 20, 848 A.2d 418 (2004) (holding that 120 day limitation on service of apportionment complaint under General Statutes § 52-102b [a] is mandatory because, inter alia, "when the legislature opts to use the words shall and may in the same statute, they must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings" [internal quotation marks omitted] ); State v. Reddy , 135 Conn. App. 65, 72-74, 42 A.3d 406 (2012) ( General Statutes § 29-38c [d], providing that court " 'shall hold a hearing to determine whether the seized firearms should be returned to the person named in the warrant or should **598 continue to be held by the state,' " was mandatory because legislature used word "may" in same statute to describe remedies, and use of word " 'shall' " was in conjunction with "substantive action verb 'hold,' " in reference to court's obligation, and used "negative terminology" of "not later than fourteen days").
"The next factor we consider in determining whether a statute is mandatory *559 or directory is whether the pre-scribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance [as opposed to] a matter of convenience.... If it is a matter of substance, the statutory provision is [generally held to be] mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory ...." (Internal quotation marks omitted.) Electrical Contractors, Inc. v. Ins. Co. of the State of Pennsylvania , supra, 314 Conn. at 760-61, 104 A.3d 713. In the context of the rules of practice, this factor requires us to consider the purpose of the rule, including the history of its promulgation. See State v. Pare , 253 Conn. 611, 624-25, 755 A.2d 180 (2000) (considering history of Practice Book § 42-31, including change from "may" to "shall" for consistency with Rule 31 [d] of Federal Rules of Criminal Procedure, to conclude that polling of criminal jury pursuant to timely request by either party is mandatory).
In examining the history and purpose of Practice Book § 11-21, we turn to our decision in Traystman , supra, 282 Conn. at 432-33, 922 A.2d 1056, in which we concluded that a trial court had improperly granted a request for attorney's fees pursuant to § 42-150bb because the defendant had made that request in a bill of costs under Practice Book § 18-5 (a), rather than by motion pursuant to Practice Book § 11-21. See id., at 429-30, 922 A.2d 1056 (noting that "costs to be included in a bill of costs generally are of a type that may be granted automatically by the court clerk,"
**599 as contemplated under General Statutes § 52-257, but "the determination of a reasonable attorney's fee pursuant to § 42-150bb requires the exercise of the trial court's discretion and is not subject to automatic assessment by the clerk"). Although Traystman does not resolve the question presented by this case;[4] see *560 id., at 433, 922 A.2d 1056 ; we observed therein that "fundamentally, Practice Book § 11-21 provides a specific postjudgment procedure for seeking statutory attorney's fees." Id., at 430, 922 A.2d 1056. Citing the commentary to Practice Book § 11-21,[5] we stated that the judges of the Superior Court adopted the rule "apparently in response to concerns raised by the Appellate Court's decision in Oakley v. Commission on Human Rights & Opportunities , [supra, 38 Conn. App. at 517, 662 A.2d 137]," which had concluded that postjudgment motions for attorney's fees under General Statutes § 4-184a"must be filed within a reasonable time of the entering of the final judgment, and that the determination of whether such a motion has been filed within a reasonable time is a matter within the discretion of the trial court."[6] (Internal quotation marks omitted.) Traystman , supra, at 431, 922 A.2d 1056. "It is reasonable to conclude that the rule requiring motions for attorney's fees to be filed within thirty days of a final judgment was adopted in recognition of the fact that a determination of reasonable attorney's fees requires the trial court to have fresh familiarity with the nature and conduct of the case that is not required for an automatic award of costs pursuant to provisions such as those contained in § 52-257." Id., at 431-32, 922 A.2d 1056 ; see Oakley v. Commission on Human Rights & Opportunities , 237 Conn. 28, 30, 675 A.2d 851 (1996) (recognizing "legitimacy" of concerns over *561 "substantial delay in the filing of a motion for attorney's fees," but stating that "the concern is one that cannot be addressed through the process of appellate review but requires a change in the appropriate provisions either of the General Statutes or of the Practice Book"). Although a construction of Practice Book § 11-21 as mandatory is consistent with the rule's purpose of ending uncertainty about enforcement and ensuring that the trial court has "fresh familiarity" with the case, a construction of the rule as directory-providing the trial court with discretion to forgive lapses in suitable cases, such as when an untimely motion does not prejudice the nonmoving party-still provides far more structure to the proceedings than the amorphous "reasonable" time standard adopted by the Appellate Court in Oakley .[7] Cf. Stewart v. Tunxis Service Center , supra, 237 Conn. at 80, 676 A.2d 819 (noting that legislative history suggested that insertion of 120 day decision deadline into Workers' Compensation Commission statute was "the essence of the thing to be done, not simply the issuance of a decision, but the issuance of a timely decision" [emphasis in original] ).
"We next consider whether holding a requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse." Electrical Contractors, Inc. v. Ins. Co. of the State of Pennsylvania , supra, 314 Conn. at 764, 104 A.3d 713. The balancing analysis attendant to this factor favors a construction of Practice Book § 11-21 as directory. Under the well established "American rule," attorney's fees are not available to a prevailing party unless provided by contract or statute. See, e.g., Aaron Manor, Inc. v. Irving , 307 Conn. 608, 616-17, 57 A.3d 342 (2013). In the present case, the fees sought by the defendant are provided by § 42-150bb, which, as the Appellate Court pointed out, "is a legislative vehicle for consumer protection that affords consumers, as a matter of law, awards of reasonable attorney's fees for their successful defense or prosecution of actions based on consumer contracts." Meadowbrook Center, Inc. v. Buchman , supra, 169 Conn. App. at 532, 151 A.3d 404 ; see, e.g., Aaron Manor, Inc. v. Irving , supra, at 617-18, 57 A.3d 342 (stating that § 42-150bb"was designed to provide equitable results for a consumer who successfully defended an action under a commercial contract and the commercial party who was entitled to attorney's fees," and that its "purpose ... is to bring parity between a commercial party and a consumer who defends successfully an action on a contract prepared by the commercial party" [internal quotation marks omitted] ). A construction of Practice Book § 11-21 as mandatory, which would deprive the trial court of authority to entertain untimely filings even when there is good cause and no prejudice to the nonmoving party, raises the specter of abridging this legal right-especially when the legislature has not provided a time limitation in the authorizing statute. We tread carefully in such cases because it "has long been understood that Practice Book provisions are not intended to enlarge or abrogate substantive rights. See General Statutes § 51-14 (a)
*562 (noting that rules of practice and procedure 'shall not abridge, enlarge or modify any substantive right or the jurisdiction of any of the courts'); In re Samantha C. , 268 Conn. 614, 639, 847 A.2d 883 (2004) ('we are obliged to interpret [the rules of practice] so as not to create a new right, but rather to delineate whatever rights may have existed, statutorily or otherwise, at the time of the proceedings underlying the present appeal')." Rosado v. Bridgeport Roman Catholic Diocesan Corp. , 292 Conn. 1, 44, 970 A.2d 656, cert. denied sub nom. Bridgeport Roman Catholic Diocesan Corp. v. New York Times Co. , 558 U.S. 991, 130 S.Ct. 500, 175 L.Ed.2d 348 (2009) ; see Wiseman v. Armstrong , supra, 295 Conn. at 110-11, 989 A.2d 1027. Put differently, we construe rules of practice "in light of" the statutory policy that they implement. In re Samantha C. , supra, at 640, 847 A.2d 883. This factor, therefore, counsels against a construction of Practice Book § 11-21 that would permit a relatively minor or nonprejudicial delay in filing to divest a party of a right granted by contract or statute.[8]
Our application of the factors set forth in Electrical Contractors, Inc. , leads us to a conclusion that is consistent with this court's earlier decisions construing deadlines provided in the rules of practice. See Disciplinary Counsel v. Elder , supra, 325 Conn. at 387-93, 159 A.3d 220 (six year limitation period for grievance complaints against attorneys under Practice Book § 2-32 [a] [2] [E] is mandatory, barring untimely complaints, because rule expressly provided equitable exceptions to limitation period for specific cases, and relatively lengthy limitations period reflected policies underlying both statutes of limitations and disciplinary proceedings); Statewide Grievance Committee v. Rozbicki , supra, 219 Conn. at 480-82, 595 A.2d 819 (failure to conduct hearing on attorney presentment within sixty days required by rules of practice did not require dismissal because good cause existed for delay and rule was directory, as it was "designed to encourage order and dispatch" in prosecution of presentments, was "cast in affirmative words," contained "no penalty for noncompliance," and purported "only to establish a time limit for acting upon complaints"); see also State v. Heredia , supra, 310 Conn. at 765-67, 81 A.3d 1163 (release is not automatic remedy for violation of Practice Book § 37-12 [a], which requires that defendant be presented to court for determination of probable cause within forty-eight hours of warrantless arrest, with court instead required to balance "the interests of individual liberty and community protection" in determining whether release is appropriate in given case); LaReau v. Reincke , 158 Conn. 486, 493-94, 264 A.2d 576 (1969) (twenty day period for filing appeal set forth in rules of practice not jurisdictional); cf. Electrical Contractors, Inc. v. Ins. Co. of the State of Pennsylvania , supra, 314 Conn. at 761-62, 104 A.3d 713 (citing cases concerning statutory deadlines). Accordingly, we conclude that Practice Book § 11-21 is directory and, therefore, affords the trial court discretion to entertain untimely motions for attorney's fees in appropriate cases.
*563 II
We next address the plaintiff's claim that remand to the trial court is not necessary, notwithstanding our conclusion that Practice Book § 11-21 is directory, because we should render judgment as a matter of law with respect to the defendant's untimely motion for attorney's fees.[9] First, the plaintiff argues that Connecticut courts should follow rule 6 (b) (1) (B) of the Federal Rules of Civil Procedure, and employ the "excusable neglect" standard in considering untimely motions for attorney's fees. Second, the plaintiff contends that, under the excusable neglect standard, the defendant's reasons for missing the deadline, namely, counsel's misunderstanding of the rule and whether a final judgment had entered, are insufficient as a matter of law. In support of this contention, the plaintiff cites Canfield v. Van Atta Buick/GMC Truck, Inc. , 127 F.3d 248, 250 (2d Cir. 1997), cert. denied, 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 117 (1998), for the proposition that a "failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect." In response, the defendant, although not challenging the excusable neglect standard propounded by the plaintiff, claims that his reasons were not unpersuasive as a matter of law, given the trial court's broad discretion to permit late filings and the relatively minor delay at issue in this case. We agree with the defendant and conclude that remand is required for the exercise of the trial court's discretion in the first instance.
In the federal courts, the "excusable neglect" standard is an "elastic concept," which implies "a determination that is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission .... Factors to be considered in evaluating excusable neglect include [1] the danger of prejudice to the [nonmovant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." (Citation omitted; internal quotation marks omitted.) Silivanch v. Celebrity Cruises, Inc. , 333 F.3d 355, 366 (2d Cir. 2003), cert. denied sub nom. Essef Corp. v. Silivanch , 540 U.S. 1105, 124 S.Ct. 1047, 157 L.Ed.2d 890 (2004) ; see also Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership , 507 U.S. 380, 392-93, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). We adopt the four factor analysis used by the federal courts because it is consistent with existing Connecticut case law governing a trial court's exercise of its discretion in determining whether to allow an untimely filing. See, e.g., Kervick v. Silver Hill Hospital , 128 Conn. App. 341, 353-55, 18 A.3d 622 (2011) (considering prejudice to opposing party, length of delay, and reason for delay with respect to untimely motion for summary judgment), rev'd on other grounds, 309 Conn. 688, 72 A.3d 1044 (2013) ; see also Ruddock v. Burrowes , 243 Conn. 569, 576-77, 706 A.2d 967 (1998) ( General Statutes § 52-592 [a], accidental *564 failure of suit statute, applies if "prior dismissal was a 'matter of form' in the sense that the plaintiff's noncompliance with a court order occurred in circumstances such as mistake, inadvertence or excusable neglect"). As in Connecticut courts, a federal district court's finding of excusable neglect, permitting a late filing, is reviewed for abuse of discretion. See, e.g., Silivanch v. Celebrity Cruises, Inc. , supra, at 362 ; Canfield v. Van Atta Buick/GMC Truck, Inc. , supra, 127 F.3d at 250 ; LoSacco v. Middletown , 71 F.3d 88, 93 (2d Cir. 1995).
The United States Court of Appeals for the Second Circuit "sets a high bar for excusable neglect concluding that failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect." Sewell v. Lincoln Life & Annuity Co. of New York , United States District Court, Docket No. 11 Civ. 4236 (ALC), 2013 WL 1187431 (S.D.N.Y. March 22, 2013) ; see Silivanch v. Celebrity Cruises, Inc. , supra, 333 F.3d at 366-68 ; Canfield v. Van Atta Buick/GMC Truck, Inc. , supra, 127 F.3d at 250. Nevertheless, federal district courts within the Second Circuit continue to forgive attorneys' lapses as excusable neglect. See LoSacco v. Middletown , supra, 71 F.3d at 93 (District Court did not abuse its discretion by allowing untimely bill of costs); Sewell v. Lincoln Life & Annuity Co. of New York , supra (underestimation of time needed to brief opposition to summary judgment motion was excusable neglect when there was no bad faith, scheduling was not affected, and moving party "was not severely prejudiced by the delay"); Laina v. United Cerebral Palsy of New York City, Inc. , United States District Court, Docket No. CV2011-3983, 2012 WL 28291 (MDG) (E.D.N.Y. January 5, 2012) ("[t]his [c]ourt finds that the [one day] gap between the deadline of defendant's answer and its extension motion, the uncertainty ... as to the exact date of that deadline, defendant corporation's erroneous report to its counsel of the date of service and defendant's need to consult with its insurance carrier constitute excusable neglect on defendant's part and valid reasons to extend the time to respond to the complaint"); United States ex rel. Moye v. Strode , 276 F.R.D. 414, 416-17 (D. Conn. 2010) (setting aside default judgment after crediting attorney's representation that "he simply forgot about the answer deadline because he did not write it down").
Guided by these cases, we disagree with the plaintiff's argument that the defendant's untimely motion for attorney's fees under Practice Book § 11-21 is barred as a matter of law or, more specifically, that remand is unnecessary because the information contained the record indicates that the trial court would abuse its discretion by allowing that untimely filing. With respect to the first two excusable neglect factors, the plaintiff has made no claim of prejudice, and the five day delay in filing was relatively minor. Similarly, there is no claim of bad faith. With respect to the reason for the delay, as was discussed extensively at oral argument before this court, the record reveals that the parties-at least counsel for the defendant-experienced some confusion following the Appellate Court's April 8, 2014 order in Meadowbrook Center, Inc. v. Buchman , supra, 149 Conn. App. at 212, 90 A.3d 219, remanding the case to the trial court with direction to render judgment in favor of the defendant. As counsel for the defendant represented at oral argument, some of this confusion may have been occasioned by the infirmity and ultimate passing of Judge Hale, the original trial judge, in the spring and summer of 2014, after the directed judgment in the present case. Indeed, on April 17, 2014, the trial court's civil caseflow office issued an order, at the direction of Judge Robaina, directing the parties to appear for a status conference on May 22, 2014. At the request of the *565 plaintiff, and with the consent of the defendant, that conference was continued to June 10, 2014. Despite the pending status conference, Judge Robaina issued an order rendering the judgment directed by the Appellate Court on April 30, 2014. Nevertheless, on June 3, 2014, the defendant filed a proposed judgment file to that effect for Judge Hale to sign, followed by his motion for attorney's fees on June 4, 2014. Given these facts, we conclude that a trial court reasonably might exercise its discretion to grant permission to file an untimely motion-at least in part with respect to trial attorney's fees-where there was some confusion as to the operative judgment date and no apparent prejudice to the nonmoving party.[10] Accordingly, remand to the trial court remains appropriate for the exercise of its discretion in the first instance.
We, therefore, agree with the Appellate Court that remanding the present case for a hearing on the defendant's motion is appropriate because the trial court improperly failed "to exercise its discretion to determine whether strict adherence to the [thirty day deadline set forth in Practice Book § 11-21 ] would 'work surprise or injustice.' Practice Book § 1-8." Meadowbrook Center, Inc. v. Buchman , supra, 169 Conn. App. at 540, 151 A.3d 404 ; see also, e.g., Costello v. Goldstein & Peck, P.C. , 321 Conn. 244, 256, 137 A.3d 748 (2016) ("the court's failure to recognize its authority to act constituted an abuse of discretion"); State v. Martin , 201 Conn. 74, 88, 513 A.2d 116 (1986) ("[w]here ... the trial court is properly called upon to exercise its discretion, its failure to do so is error").
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

Practice Book § 11-21 provides: "Motions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. If appellate attorney's fees are sought, motions for such fees shall be filed with the trial court within thirty days following the date on which the appellate court or supreme court rendered its decision disposing of the underlying appeal. Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages."

We granted the plaintiff's petition for certification for appeal, limited to the following issue: "Did the Appellate Court properly rule that the time limitation ... governing motions for attorney's fees [set forth] in Practice Book § 11-21 is directory and not mandatory?" Meadowbrook Center, Inc. v. Buchman , 324 Conn. 918, 154 A.3d 1007 (2017).

General Statutes § 42-150bb provides: "Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counter-claim based upon the contract or lease. Except as hereinafter provided, the size of the attorney's fee awarded to the consumer shall be based as far as practicable upon the terms governing the size of the fee for the commercial party. No attorney's fee shall be awarded to a commercial party who is represented by its salaried employee. In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party. For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

The plaintiff argues that Traystman , supra, 282 Conn. at 418, 922 A.2d 1056, "strongly implied that [Practice Book] § 11-21 establishes a mandatory filing deadline," citing, in its reply brief, commentary on the rule by several distinguished practitioners relying on Traystman for the proposition that "[t]he failure to file a timely motion for attorney's fees is fatal ." (Emphasis added.) W. Horton et al., 1 Connecticut Practice Series: Superior Court Civil Rules (2017-2018 Ed.) § 11-21, author's comments, p. 600. We disagree. We acknowledge the presence of some language in Traystman suggesting that a timely motion is a mandatory precondition to the award of attorney's fees under Practice Book § 11-21, in particular the statement that the "trial court improperly granted the defendant's request for attorney's fees because he failed to file a timely motion for attorney's fees pursuant to Practice Book § 11-21." (Emphasis added.) Traystman , supra, at 428, 922 A.2d 1056. Despite rejecting the defendant's argument in Traystman that the trial court had properly awarded attorney's fees "despite his failure to request [them] within the thirty day time limit provided by Practice Book § 11-21," we nevertheless did not resolve in that case whether Practice Book § 11-21 is mandatory or directory, insofar as the trial court in that case had "expressly concluded that Practice Book § 11-21 did not apply to a request for attorney's fees pursuant to § 42-150bb, and indicated that it had concluded that it was authorized to award such fees in a proceeding on a bill of costs when it stated that it would not address the plaintiff's claim to the contrary because the plaintiff had not provided any authority in support of that claim. Thus, the trial court saw no need to consider whether the time limits provided by [Practice Book ] § 11-21 are mandatory or directory, or to exercise its discretion to excuse compliance with those time limits ." (Emphasis altered.) Id., at 432-33, 922 A.2d 1056. Accordingly, we specifically stated that, "under these circumstances, it would be inappropriate for this court to review the action of the trial court as if it had treated the portion of the defendant's bill of costs requesting attorney's fees pursuant to § 42-150bb as the effective equivalent of a motion for attorney's fees pursuant to [Practice Book] § 11-21 and had exercised its discretion to excuse compliance with the rule's timing requirement." Id., at 433, 922 A.2d 1056.
Thus, we similarly disagree with the plaintiff's reliance on Cornelius v. Rosario , supra, 167 Conn. App. at 135, 143 A.3d 611, in which the Appellate Court held that the trial court had improperly awarded a defendant attorney's fees because his "motion for attorney's fees and costs was not filed within thirty days of the denial of the motion to open or within thirty days of the notice of the denial of the motion to reargue the motion to open, as required by Practice Book § 11-21." (Emphasis added.) The Appellate Court also rejected the defendant's claim that "the trial court improperly declined to award attorney's fees for the fees initially incurred at the trial court" on the ground that the motion was untimely under § 11-21 because it was filed more than thirty days after summary judgment was rendered in favor of the defendant, despite the fact that the plaintiff took an appeal in the meantime. Id., at 135-36, 143 A.3d 611. The Appellate Court's decision in Cornelius simply concerned what events triggered the thirty day filing period, and, as in Traystman , supra, 282 Conn. at 430-32, 922 A.2d 1056, upon which the Appellate Court relied in Cornelius ; see Cornelius v. Rosario , supra, at 137-38, 143 A.3d 611 ; the question of whether § 11-21 is a mandatory or directory provision simply was not at issue.

The commentary to Practice Book § 11-21 indicates that it "limits the time period within which postjudgment motions for [attorney's] fees may be filed and is aimed principally at statutory [attorney's] fees but, where appropriate, may be applied in situations where [attorney's] fees are founded upon an enforceable provision in a contract. The rule applies to final judgments in the trial court and to final dispositions rendered by the [A]ppellate [C]ourt and the [S]upreme [C]ourt. The rule does not apply to [attorney's] fees that are assessed as damages. See generally Oakley v. Commission on Human Rights & Opportunities , [supra, 38 Conn. App. at 506, 662 A.2d 137 ]." Practice Book (1999) § 11-21, commentary.

In Oakley v. Commission on Human Rights & Opportunities , supra, 38 Conn. App. at 515, 662 A.2d 137, the Appellate Court rejected a claim that the trial court lacked jurisdiction to entertain a motion for attorney's fees pursuant to § 4-184a (b), governing administrative appeals, which was filed nearly five months after the final judgment was rendered. Like § 42-150bb, § 4-184a (b) lacks a statutory deadline for fee motions. In so concluding, the Appellate Court described as "important" arguments about the "the strong public interest in the finality of legal proceedings, and that, because as a practical matter costs cannot be assessed until after the judgment, there cannot be an unlimited time in which the prevailing party can file a motion to recover those costs." Id.

We disagree with the plaintiff's argument that we should presume from the use of the word "shall" that the judges of the Superior Court intended Practice Book § 11-21 to be mandatory. Had the judges used a more permissive word such as "may," they would have rendered the new rule completely meaningless, thus nullifying its purpose of providing structure in the wake of Oakley v. Commission on Human Rights & Opportunities , supra, 38 Conn. App. at 506, 662 A.2d 137. Put differently, an actual deadline was necessary to impart some structure to the proceedings, despite the fact that judges retain discretion to permit untimely filings in suitable cases.

We disagree with the plaintiff's contention, made at oral argument before this court, that the Appellate Court's description of this case as one that "requires us to assess the interplay between a legislative mandate based on a public policy and a procedural rule of practice"; Meadowbrook Center, Inc. v. Buchman , supra, 169 Conn. App. at 529, 151 A.3d 404 ; constitutes a categorical logical "flaw" that undermines its construction of Practice Book § 11-21. Although the plaintiff accurately points out that § 11-21 applies to motions for attorney's fees that are authorized by contract as well as statute, that is a distinction without a difference with respect to whether the rule of practice may be enforced in a way that abridges a substantive legal right.

Although this additional claim is beyond the scope of the certified question; see footnote 2 of this opinion; and was not addressed by the Appellate Court, we address it in the interest of judicial economy because doing so will provide guidance for the trial court on remand. We note that the defendant does not object to our consideration of this issue in the present appeal and has fully briefed his response. See, e.g., Feliciano v. Autozone, Inc. , 316 Conn. 65, 84, 111 A.3d 453 (2015) ; State v. James , 261 Conn. 395, 411, 802 A.2d 820 (2002) ; but see Practice Book § 84-11 (b) (setting forth procedure for "present[ing] for review any claim that the relief afforded by the [A]ppellate [C]ourt in its judgment should be modified").

In any event, the lapse in this case was not as egregious as in Canfield , upon which the plaintiff relies, in which the attorney was specifically reminded as to the unambiguous deadline at issue, which governed the filing of an objection to a motion for summary judgment. Canfield v. Van Atta Buick/GMC Truck, Inc. , supra, 127 F.3d at 249 ; see also Silivanch v. Celebrity Cruises, Inc. , supra, 333 F.3d at 370 (concluding that District Court "abused its discretion when it decided that ... counsel's determination of the wrong date by which [a party] had to file a notice of appeal in sole reliance on a remark by counsel for another party during a scheduling conference for another appeal constituted excusable neglect"); Rodriguez v. Brass Mill Center, LLC , Superior Court, judicial district of Hartford, Docket No. CV-16-6064935-S, 2017 WL 5202843 (October 2, 2017) ("The court finds that the delay of 265 days was ... not the result of a minor failure to adhere to the timing requirements of Practice Book § 11-21.... Rather, such delay demonstrated an egregious lack of fidelity ... to basic rules of practice. The court therefore finds that the enforcement of the thirty day mandate of Practice Book § 11-21 works neither an injustice nor surprise ...." [Citation omitted.] ).