******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## PATRICK PALMIERI ET AL. *v.* FRANK CIRINO
### (AC 46333)

Bright, C. J., and Westbrook and DiPentima, Js.

*Syllabus*

The plaintiff, who commenced this action seeking, inter alia, to quiet title to certain real property in New Haven, appealed to this court from the judgment of the trial court awarding attorney's fees to the defendant, following a default judgment rendered against the plaintiff on the defendant's counterclaim. *Held*:

1. The plaintiff could not prevail on his claim that the trial court's award of attorney's fees was improper because the affidavit of the defendant's counsel in support of attorney's fees was filed beyond the thirty day deadline set forth in the applicable rule of practice (§ 11-21) and because the defendant failed to demonstrate that the untimely filing was the result of excusable neglect; because Practice Book § 11-21 does not govern awards of attorney's fees that constitute an award of punitive damages and the court stated that it was awarding attorney's fees as punitive damages, the defendant was not required to comply with the deadline in § 11-21 and the court was not required to determine whether the untimely filing was the result of excusable neglect.

2. The trial court abused its discretion in awarding attorney's fees for expenses incurred by the defendant in defending prior actions between the parties: the amount of attorney's fees awarded should have been limited to the fees incurred in the present case; moreover, the court did not state that the litigation expenses that the defendant had incurred over the course of the multiple actions between the parties were the basis for its award of punitive damages, and the defense did not provide any legal support for this claim; accordingly, the case was remanded to the trial court to conduct a new hearing on the defendant's motion for attorney's fees.

Argued February 7—officially released July 2, 2024

*Procedural History*

Action seeking, inter alia, to quiet title to certain real property, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the defendant filed a counterclaim; thereafter, the court, *Robinson, J.*, granted the defendant's motion to dismiss and rendered judgment for the defendant on the complaint; subsequently, the case was tried to the court,

*Robinson, J.*; judgment for the defendant on the counterclaim; thereafter, the court, *Hon. Jon C. Blue*, judge trial referee, granted the defendant's motion for attorney's fees, and the plaintiff appealed to this court. *Reversed; further proceedings.*

*Stephen R. Bellis*, for the appellant (plaintiff).

*Patricia A. Cofrancesco*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff in the underlying quiet title action, Patrick Palmieri,[1] appeals from the judgment of the trial court awarding attorney's fees to the defendant, Frank Cirino, following a default judgment rendered against the plaintiff on the defendant's counterclaim. On appeal, the plaintiff claims that the court (1) abused its discretion in issuing the award because the affidavit in support of attorney's fees was filed beyond the thirty day deadline set forth in Practice Book § 11-21 and (2) improperly awarded attorney's fees that were incurred prior to the present action. We agree with the plaintiff's second claim and, accordingly, reverse the judgment of the trial court and remand the case for a new hearing on the defendant's motion for attorney's fees.

The record reveals the following undisputed facts and procedural history. The plaintiff owns certain real property in the city of New Haven that is adjacent to the defendant's property. In February, 2015, the plaintiff initiated the underlying action against the defendant seeking to quiet title to a beach area and jetty running

---

[1] Palmieri Cove Associates, LLC, also was a named plaintiff, but it was defaulted for failure to appear on the defendant's counterclaim and it is not participating in this appeal. Accordingly, we refer in this opinion to Patrick Palmieri as the plaintiff and to Palmieri Cove Associates, LLC, by name when necessary.

along the shoreline bordering the parties' properties, a declaratory judgment for an easement, and monetary damages for trespass and nuisance.

In his amended answer, the defendant denied the plaintiff's claims and asserted two special defenses in addition to a counterclaim alleging, inter alia, abuse of process. The defendant subsequently filed a revised three count counterclaim alleging abuse of process, negligent infliction of emotional distress and intentional infliction of emotional distress. The defendant alleged that the plaintiff and/or Palmieri Cove Associates, LLC, previously had filed five lawsuits against him—in 2002, 2008, 2009, 2010 and 2012, in addition to the present action filed in 2015—all relating to disputes over their adjoining properties.[2] The defendant claimed that the plaintiff and/or Palmieri Cove Associates, LLC, filed these actions for the improper purpose of trying to force him out of his property, and that he suffered from emotional distress, high blood pressure and sleeplessness as a result of the plaintiff's conduct.[3] The plaintiff filed a reply denying the allegations in the counterclaim.

[2] In the 2002 action, the trial court rendered judgment for the defendant after concluding that the plaintiff had no right to use the beach along the boundary of the defendant's property, and this court affirmed that portion of the trial court's judgment. See *Palmieri* v. *Cirino*, 90 Conn. App. 841, 845–48, 880 A.2d 172, cert. denied, 276 Conn. 927, 889 A.2d 817 (2005). In the defendant's counterclaim in the present case, he alleged that the plaintiff and/or Palmieri Cove Associates, LLC, nevertheless continued to seek ownership of the beach area through different legal theories in the 2010, 2012 and 2015 lawsuits.

[3] Specifically, the defendant alleged that, in addition to having to defend himself against the lawsuits filed by the plaintiff and/or Palmieri Cove Associates, LLC, the plaintiff, among other things, had placed posters around their neighborhood depicting the defendant's photograph with the caption " 'stalker' "; filed false complaints with the New Haven Building Department and the Water Pollution Control Authority of the City of New Haven; removed 100 feet of the defendant's fence on three different occasions; cut down trees and shrubs on the defendant's property; and lunged at the defendant with a plastic baseball bat, which caused the defendant to fall to the ground, and the plaintiff then sprayed the defendant with a garden hose.

After the complaint was dismissed in March, 2017, a trial on the defendant's counterclaim took place on July 28, 2017.[4] The plaintiff failed to appear for trial and the court, *Robinson, J.*, entered a default against him on the counterclaim. In light of the default, which eliminated any issues as to the plaintiff's liability, the only issue for the court to determine was the appropriate amount of damages to be awarded to the defendant.[5]

After hearing evidence as to damages, Judge Robinson awarded the defendant a total of $466,304.07 in compensatory damages and determined that the defendant also was entitled to attorney's fees as punitive damages. She explained: "The defendant . . . presented evidence that he incurred attorney's fees and surveyor's fees to defend himself against the multiple lawsuits initiated by the [plaintiff and/or Palmieri Cove Associates, LLC] . . . . Further, the defendant . . . presented evidence that he sustained severe emotional distress and was forced to seek medical and mental health treatment because of the intentional actions of the [plaintiff] . . . .

"The court finds that the defendant . . . is entitled to compensatory damages in the amount of $216,304.07 for economic losses and $250,000 for noneconomic losses for the abuse of process claim and the negligent infliction of emotional distress claim. The court also finds that the defendant . . . is entitled to punitive damages resulting from the intentional infliction of emotional distress and will award itemized attorney's

---

[4] The defendant had moved to dismiss the complaint on the basis that the plaintiffs did not have a legally cognizable interest in the property at issue and, therefore, lacked standing to bring the action.

[5] "[E]ntry of default, when appropriately made, conclusively determines the liability of a defendant. . . . Following the entry of a default, all that remains is for the plaintiff to prove the amount of damages to which it is entitled." (Internal quotation marks omitted.) *Dawson* v. *Britagna*, 162 Conn. App. 801, 810 n.3, 133 A.3d 880 (2016).

fees, when they are submitted to the court. Therefore, the total award for compensatory damages is $466,304.07. The court will award attorney's fees when an affidavit of attorney's fees is submitted."

More than five years later, on November 9, 2022, the defendant filed an affidavit in support of attorney's fees. The affidavit set forth attorney's fees and costs totaling $76,693.50. Specifically, the defendant's counsel averred that the defendant had incurred $33,690 in attorney's fees in connection with her representation of him in the present case, since March, 2015, and that the defendant also had incurred $43,003.50 in attorney's fees to other counsel in connection with a bankruptcy proceeding that had taken place postjudgment. The plaintiff filed an objection to the defendant's request for attorney's fees.

By the time the defendant filed the affidavit in support of attorney's fees, Judge Robinson was no longer a judge of the Superior Court. The matter was then referred to the court, *Hon. Jon C. Blue*, judge trial referee, which first held a hearing on the issue of attorney's fees on December 7, 2022. At that hearing, the plaintiff's counsel argued consistently with the plaintiff's written objection that the defendant was not entitled to postjudgment attorney's fees[6] and that the court should deny the defendant's request altogether because the affidavit was

_____

[6] At the hearing, the parties' counsel provided the court with background information regarding the postjudgment proceedings. They explained that, after the judgment was rendered on July 28, 2017, the plaintiff initially paid only a portion of the compensatory damages award to the defendant. The defendant subsequently recorded judgment liens on three of the plaintiffs' properties and then commenced an action to foreclose those liens. In or around August, 2019, while the foreclosure proceeding was still pending, the plaintiff filed for bankruptcy. The bankruptcy proceeding subsequently was dismissed upon the defendant's motion. Approximately one and one-half years after the bankruptcy dismissal, the plaintiff paid the defendant the remainder of the compensatory damages award after selling one of his properties.

filed beyond the thirty day deadline set forth in Practice Book § 11-21.[7] Judge Blue responded that he would consider the affidavit of the defendant's counsel and the issue of attorney's fees, even though that issue was "belatedly" before him. Judge Blue also ruled that he did not have authority pursuant to Judge Robinson's order to award postjudgment attorney's fees, because that order awarded attorney's fees as punitive damages for "past . . . wrongdoing." Judge Blue explained that he was limited to awarding attorney's fees that were "incurred prior to and on July 28, 2017," the date of the judgment, and that it would require the defendant's counsel to submit an amended affidavit of attorney's fees reflecting the fees incurred for that time period. Judge Blue subsequently issued an order directing the defendant's counsel to submit an amended affidavit of attorney's fees by December 14, 2022.

The defendant filed an amended affidavit of attorney's fees on December 14, 2022, and the plaintiff filed an objection. The defendant subsequently filed a "corrected" amended affidavit on March 8, 2023 (corrected affidavit). In the corrected affidavit, the defendant's counsel averred that the defendant had incurred a total of $216,304.07 in attorney's fees, from 2002 until May, 2017, to defend himself in the numerous actions filed by the plaintiff and/or Palmieri Cove Associates, LLC. The defendant's counsel also averred that the defendant had incurred an additional $5190 in expert witness fees during that time, and, therefore, the "new grand total" amount of fees claimed was $221,494.07.

---

[7] Practice Book § 11-21 provides: "Motions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. If appellate attorney's fees are sought, motions for such fees shall be filed with the trial court within thirty days following the date on which the Appellate Court or Supreme Court rendered its decision disposing of the underlying appeal. Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages."

Judge Blue addressed the corrected affidavit at a March 9, 2023 hearing. At the outset, Judge Blue indicated that Judge Robinson's order awarding punitive damages in the form of attorney's fees did not include expert witness fees. The defendant's counsel stated that the total amount of attorney's fees sought, excluding the expert witness fees, was $200,494.07.[8]

The plaintiff's counsel again argued that the court should decline to award attorney's fees because the defendant did not file an affidavit of attorney's fees until more than five years after the judgment was rendered, which was well beyond the thirty day deadline set forth in Practice Book § 11-21. Judge Blue concluded that an award of attorney's fees was not time barred under that provision. Judge Blue recognized that, pursuant to *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 604, 181 A.3d 550 (2018), the thirty day deadline is directory, rather than mandatory. Judge Blue explained that he would exercise his discretion to permit the claim for attorney's fees because, "although the [defendant's] claim is somewhat belated here, this is a little bit different because Judge Robinson has ordered the payment of attorney's fees. . . . Attorney's fees were ordered by Judge Robinson in 2017."

In addition, Judge Blue questioned the defendant's counsel as to why the itemization of fees included work beginning in October, 2002, when "this is a 2015 case. . . . I don't see how you could have been working on a 2015 case in 2002." The defendant's counsel responded that "there were multiple pieces of litigation . . . that were part of the abuse of process trial." Judge Blue recognized that, typically, attorney's fees are awarded only for the case at issue, and, if Judge Robinson had wanted to award attorney's fees from a different case, "she could have said so and she did not."

---

[8] It is unclear from our review of the corrected affidavit how the defendant's counsel arrived at the figure of $200,494.07.

The defendant's counsel then directed Judge Blue's attention to the portion of Judge Robinson's order in which she stated that the defendant "presented evidence that he incurred attorney's fees and surveyor's fees to defend himself against the multiple lawsuits . . . ." The plaintiff's counsel argued in response that Judge Robinson was not, in her award of attorney's fees, referring to the multiple lawsuits that preceded the present action, because her compensatory damages award of more than $466,000 "presumably included that." Judge Blue disagreed with the plaintiff's counsel, noting that Judge Robinson awarded the compensatory damages before stating that she would "award attorney's fees when [an] affidavit of attorney's fees is submitted." Judge Blue explained: "That, to me, means that the compensatory damages award does not include attorney's fees. . . . [T]hat is for emotional distress."

At the conclusion of the hearing on March 9, 2023, Judge Blue issued an oral decision[9] in which he awarded the defendant $200,494.07, concluding that Judge Robinson had intended to award attorney's fees for the "multiple lawsuits" that extended from 2002 until 2017. This appeal followed.

At the outset, we note the legal principles governing the review of a trial court's award of attorney's fees or other litigation expenses. "We have explained that Connecticut adheres to the American rule . . . [which reflects the idea that] in the absence of statutory or contractual authority to the contrary, a successful party is not entitled to recover attorney's fees or other ordinary expenses and burdens of litigation . . . ." (Internal quotation marks omitted.) *Saunders* v. *Briner*, 334 Conn. 135, 179, 221 A.3d 1 (2019). "Despite the general rule, our Supreme Court has recognized exceptions for

---

[9] Judge Blue signed the transcript of his oral decision in compliance with Practice Book § 64-1.

cases in which the party or its counsel has acted in bad faith . . . and for cases in which attorney's fees are assessed as punitive damages." (Citation omitted.) *Mangiante* v. *Niemiec*, 98 Conn. App. 567, 570, 910 A.2d 235 (2006). "[C]ommon-law punitive damages are akin to statutorily authorized attorney's fees in practicality and purpose, insofar as both provide the same relief and serve the same function . . . namely, fully compensating injured parties." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Hylton* v. *Gunter*, 313 Conn. 472, 486, 97 A.3d 970 (2014); see also id., 484 (common-law punitive damages are limited under Connecticut law to litigation expenses, such as attorney's fees less taxable costs).

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Saunders* v. *Briner*, supra, 334 Conn. 179.

To the extent that the plaintiff's claims require us to interpret Judge Robinson's order, our review is plenary. See *Glory Chapel International Cathedral* v. *Philadelphia Indemnity Ins. Co.*, 224 Conn. App. 501, 512, 313 A.3d 1273 (2024); see also *Clark* v. *Clark*, 150 Conn. App. 551, 569 n.12, 91 A.3d 944 (2014) ("[t]he construction of an order is a question of law over which we exercise plenary review" (internal quotation marks omitted)). "As a general rule, [orders and] judgments are to be

construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making . . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *Sessa* v. *Reale*, 213 Conn. App. 151, 161–62, 278 A.3d 44 (2022).

I

The plaintiff first claims that Judge Blue's award of attorney's fees was improper because the affidavit of the defendant's counsel was filed well beyond the thirty day deadline set forth in Practice Book § 11-21, and the defendant failed to demonstrate that the untimely filing was the result of excusable neglect pursuant to *Meadowbrook Center, Inc.*[10] We are not persuaded.

Practice Book § 11-21 does not govern the court's award of attorney's fees as punitive damages. Section 11-21 provides in relevant part: "Motions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. . . . *Nothing in this section shall be deemed to affect an award of attorney's fees*

_____

[10] In *Meadowbrook Center, Inc.*, our Supreme Court concluded that the thirty day deadline provided by Practice Book § 11-21 is directory, rather than mandatory, and thus affords the trial court discretion to entertain untimely motions for attorney's fees in appropriate cases. *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 604. Our Supreme Court then set forth factors for a trial court to consider in exercising that discretion to determine whether to allow an untimely filing and to determine whether there is "excusable neglect" for the late filing, including "[1] the danger of prejudice to the [nonmovant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." (Internal quotation marks omitted.) Id., 606.

*assessed as a component of damages.*" (Emphasis added.) Consistent with the last sentence of that provision, this court has held that "[t]he time limits of . . . § 11-21 do not apply to a trial court's award of attorney's fees as damages." *Mangiante* v. *Niemiec*, 98 Conn. App. 567, 576, 910 A.2d 235 (2006); see also, e.g., *Torrance Family Ltd. Partnership* v. *Laser Contracting, LLC*, 94 Conn. App. 526, 528 n.1, 893 A.2d 460 (2006) ("[i]nsofar as the statute authorizing the award of attorney's fees . . . clearly contemplates those fees as a component of damages . . . we conclude that . . . § 11-21 is wholly inapplicable").

Judge Robinson explicitly stated that she was awarding attorney's fees as punitive damages for the defendant's claim of intentional infliction of emotional distress. The defendant, therefore, was not required to comply with the thirty day deadline set forth in Practice Book § 11-21. See *Mangiante* v. *Niemiec*, supra, 98 Conn. App. 576. In addition, because the affidavit was not untimely filed under that provision, Judge Blue did not need to determine whether there was excusable neglect pursuant to *Meadowbrook Center, Inc.*[11] Accordingly, Judge Blue did not abuse his discretion in awarding attorney's fees even though the affidavit of the defendant's counsel was filed more than thirty days after the judgment rendered by Judge Robinson.

## II

The plaintiff also claims that Judge Blue abused his discretion in awarding attorney's fees for expenses incurred by the defendant in defending the prior actions between the parties. Specifically, the plaintiff argues that the amount of the attorney's fees award should

---

[11] The attorney's fees at issue in *Meadowbrook Center, Inc.*, were not awarded as a component of damages. See *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 590.

have been limited to the fees incurred in the present action. We agree.

At the conclusion of the March 9, 2023 hearing, Judge Blue explained his reasoning for the amount of the $200,494.07 award of attorney's fees as follows: "Ordinarily, the court would award just the attorney's fees spent on this case. However, this is an award of . . . punitive damages given by Judge Robinson. And it is for . . . she specifically mentions the attorney's fees in multiple lawsuits. So, it is my best reading of Judge Robinson's order . . . that she intended for attorney's fees in the multiple litigations to be awarded. I might be right. I might be wrong. But I believe that's what Judge Robinson intended. And I think that her, to me, evident intention ought to be honored."

We do not agree with Judge Blue's interpretation of Judge Robinson's order. Although Judge Robinson stated that the defendant had "presented evidence that he incurred attorney's fees . . . to defend himself against the multiple lawsuits initiated by the [plaintiff and/or Palmieri Cove Associates, LLC]," she did not state that those expenses would serve as the basis for her award of punitive damages. The record provided to this court does not reflect the basis for Judge Robinson's calculation of the economic losses that were included in the compensatory damages award.[12] In the corrected affidavit, however, the defendant's counsel averred that the defendant had incurred a total of $216,304.07 in attorney's fees, which is the *exact*

---

[12] At oral argument before this court, the defendant's counsel explained that the evidence of economic loss that she had presented to Judge Robinson included the defendant's medical expenses, property damage expenses, and the attorney's fees that the defendant had incurred in defending against the "litany of litigation" brought by the plaintiff and/or Palmieri Cove Associates, LLC. As for the evidence of the attorney's fees incurred by the defendant, the defendant's counsel stated that she had submitted to Judge Robinson the same spreadsheet that she submitted to Judge Blue in considering the corrected affidavit of attorney's fees.

*amount* of economic damages that Judge Robinson included in the compensatory damages award.

At oral argument before this court, the defendant's counsel suggested that Judge Robinson properly could have awarded attorney's fees from the prior actions as economic damages, to make the defendant whole, and again as punitive damages, to serve as a deterrent to future misconduct. The defendant's counsel presented no legal support, and we have found none, to support this proposition. Instead, our case law indicates that common-law punitive damages are designed to "fully compensat[e] injured parties"; *Hylton* v. *Gunter*, supra, 313 Conn. 485–86; and that they are "restricted to cost of litigation less taxable costs of the action being tried *and not that of any former trial.*" (Emphasis added; internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 93, 881 A.2d 139 (2005); see also id., 96–98 (characterizing certain statutory double damages as more punitive in nature than common-law punitive damages). Accordingly, we conclude that the amount of the attorney's fees awarded should have been limited to the expenses incurred in the present action, and that Judge Blue improperly awarded attorney's fees for expenses incurred by the defendant in defending the prior actions between the parties.

The judgment is reversed and the case is remanded with direction to conduct a new hearing on the defendant's motion for attorney's fees consistent with this opinion.

In this opinion the other judges concurred.