TORRANCE FAMILY LIMITED PARTNERSHIP *v.*
LASER CONTRACTING, LLC
(AC 24920)

Lavery, C. J., and McLachlan and Peters, Js.[*]

---

[*] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued December 1, 2005—officially released March 28, 2006

*Frank J. Liberty*, for the appellant (defendant).

*Brian B. Staines*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant, Laser Contracting, LLC, appeals from the judgment of the trial court challenging the award of attorney's fees to the plaintiff, the Torrance Family Limited Partnership, in connection with the plaintiff's successful application for the discharge of

two mechanic's liens that had been filed by the defendant. The defendant claims on appeal that the court improperly (1) granted the plaintiff's motion for attorney's fees because that motion was untimely pursuant to Practice Book § 11-21,[1] (2) refused to hold an evidentiary hearing consistent with General Statutes § 49-51,[2] (3) found that the plaintiff's application to discharge the liens complied with § 49-51 and (4) concluded that the liens had been filed without just cause. We agree that the court should have held an evidentiary hearing to allow the defendant to argue its objections to the

[1] Practice Book § 11-21 provides in relevant part that "[m]otions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. . . . Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages."

Because the defendant argues that the plaintiff's failure to adhere to this provision deprived the court of subject matter jurisdiction, we address it before proceeding further. Insofar as the statute authorizing the award of attorney's fees in this matter clearly contemplates those fees as a component of damages; see footnote 2; we conclude that Practice Book § 11-21 is wholly inapplicable. Cf. *TDS Painting & Restoration, Inc.* v. *Copper Beech Farm, Inc.*, 73 Conn. App. 492, 517 n.18, 808 A.2d 726 (Practice Book § 11-21 inapplicable in action to foreclose mechanic's lien under General Statutes § 52-249 [a]), cert. denied, 262 Conn. 925, 814 A.2d 379 (2002).

[2] General Statutes § 49-51 provides in relevant part that "[a]ny person having an interest in any real or personal property described in any certificate of lien, which lien is invalid but not discharged of record, may give written notice to the lienor sent to him at his last-known address by registered mail or by certified mail, postage prepaid, return receipt requested, to discharge the lien. Upon receipt of such notice, the lienor shall discharge the lien by sending a release sufficient under section 52-380d, by first class mail, postage prepaid, to the person requesting the discharge. If the lien is not discharged within thirty days of the notice, that person may apply to the Superior Court for such a discharge, and the court may adjudge the validity or invalidity of the lien and may award the plaintiff damages for the failure of the defendant to make discharge upon request. If the court is of the opinion that such certificate of lien was filed without just cause, it may allow, in its discretion, damages to any person aggrieved by such failure to discharge, at the rate of one hundred dollars for each week after the expiration of such thirty days, but not exceeding in the whole the sum of five thousand dollars or an amount equal to the loss sustained by such aggrieved person as a result of such failure to discharge the lien, which loss shall include, but not be limited to, a reasonable attorney's fee, whichever is greater."

claimed attorney's fees and, accordingly, reverse in part the judgment of the trial court.[3]

The following facts and procedural history, which are not disputed, are relevant to the appeal. On or about January 22, 2003, the defendant, acting through its sole member, Scott Weston, filed in the Salem land records a certificate of mechanic's lien on premises known as 120 Rattlesnake Ledge Road and on the improvements to those premises. The certificate stated that the "lien is being filed against the following persons: THE TOR-R[A]NCE FAMILY LIMITED PARTNERSHIP," and that it was in the amount of $49,497.32, an amount purportedly due for materials supplied and services rendered for the plaintiff by the defendant and related to a construction project at the premises. Also at that time, the defendant, acting through Weston, sent the plaintiff a notice of intent to file the aforementioned lien. Both the certificate and the notice indicated that the work for which payment was sought was performed between April 8, 2002, and January 3, 2003. See General Statutes § 49-34.

On February 4, 2003, the plaintiff filed in the Superior Court an application for the discharge of the mechanic's lien. The application recited that that the plaintiff had an interest in 120 Rattlesnake Ledge Road by virtue of an unrecorded deed,[4] that the defendant via Weston

[3] Because the court refused to afford the defendant the evidentiary hearing in which it sought to pursue the third and fourth claims it has raised on appeal, the court necessarily did not decide those claims. Accordingly, as to those claims, there is nothing for this court to review on appeal. On remand, the court should hold an evidentiary hearing as to all of the issues the defendant attempted to argue in objecting to the plaintiff's motion for attorney's fees, with the exception of the claim concerning Practice Book § 11-21. See footnote 1.

[4] A copy of that deed was appended to the application. It was executed on December 30 and 31, 2002, by Eric Greenstein and Harry Picazio, respectively, and indicated a transfer of the subject premises from those individuals to the plaintiff in exchange for $55,000. Thus, for most of the time during which the defendant performed the work for which he sought payment, Greenstein and Picazio were the owners of the property.

had filed a lien on the property and notified the plaintiff thereof, and that there was no probable cause to sustain the lien. See General Statutes § 49-35a. The application stated further that there was no contract between the parties for the services rendered by the defendant; that a member of the defendant, presumably Weston, had made improvements to the subject premises unilaterally in expectation of purchasing the premises; that the owners of the premises, identified as "Eric Greenstein et al.," did not consent to said improvements; and that the defendant's claim was excessive and disproportionate to the work performed. The plaintiff sought discharge of the lien and "reimbursement for [the plaintiff's] costs, legal fees, and expenses and all other appropriate equitable orders of the court . . . ." The caption and text of the application identified the plaintiff-applicant as the Torrance Family Limited Partnership. On the final page of the application, however, just above the signature line for the plaintiff's attorney, was the following statement: "Respectfully Submitted Niantic Real Estate Limited Liability Company."

On February 19, 2003, the plaintiff's attorney mailed a letter to the defendant's attorney requesting a voluntary release of the lien. See General Statutes § 49-51 (a). The request stated in relevant part: "This correspondence shall serve as demand for the following: 1. That Weston and/or . . . Laser Contracting LLC immediately release the Mechanic's Lien filed against the property known as 120 Rattlesnake Ledge Road, Salem, Connecticut."[5] The request also referred to the application for discharge that the plaintiff had filed with the court, indicating that the defendant had received a copy of that application.

---

[5] Otherwise, the letter demanded reimbursement of amounts purportedly charged by the defendant to the plaintiff's credit card.

On March 2, 2003, the plaintiff sold the subject property to a third party, Peggy Lutz.[6] On March 12, 2003, the plaintiff filed a motion to amend its application for discharge of the mechanic's lien. Appended was an amended application that was identical to the first except that the "Torrance Family Limited Partnership" was substituted for "Niantic Real Estate Limited Liability Company" above the signature line.

On March 20, 2003, the defendant filed a second mechanic's lien in the Salem land records. The second lien was identical to the first, but was directed at Greenstein and Harry Picazio, who also was an owner of the property while much of the work was performed there. See footnotes 4 and 8. The defendant also sent notice of the second lien to Greenstein and Picazio, but not to Lutz.

On April 21, 2003, the court held a hearing on the applications to discharge the mechanic's liens. Weston testified first on behalf of the defendant and generally described the work he had done and the expenses he had incurred.[7] After the plaintiff's attorney cross-examined Weston, the defendant rested, though indicating that it had rebuttal evidence. The plaintiff then asked the court to discharge both of the liens for lack of probable cause regarding their validity, arguing, in short, that they had not been directed to the proper parties.[8] Given that circumstance, and also because of

[6] Also on March 2, 2003, the deed from Greenstein and Picazio to the plaintiff and, apparently, the deed from the plaintiff to Lutz, were recorded.

[7] Pursuant to General Statutes § 49-35b (a), at a hearing on an application to discharge a mechanic's lien, "the lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. . . ."

[8] As to the first lien, it was not directed to Greenstein and Picazio, who were owners of the property while much of the work was performed, and were the owners of record at the time the lien was filed. As to the second lien, it was not directed to Lutz, who had become the owner of the property by the time the lien was filed. The defendant's counsel cited case law in an attempt to overcome the plaintiff's argument as to the first lien. It was subsequently established, however, that the defendant also lacked the requisite return of service to show proper notice to the plaintiff for that lien,

the defendant's failure to offer proof that he had served notice of the first lien on the plaintiff; see footnote 8; the court granted the plaintiff's application to discharge the liens. On April 22, 2003, the court issued a written order discharging the liens.

On September 3, 2003, the plaintiff filed a motion for attorney's fees and costs pursuant to § 49-51. See footnote 2. In that motion, the plaintiff stated that it had sought and obtained discharge of the January 22, 2003 lien and that previous to that discharge, on February 19, 2003, it had requested that the defendant provide a voluntary release. It argued further that the defendant had not provided that release and had filed a second, invalid lien, and that the plaintiff in obtaining the discharge had expended a total of $11,299.30 in attorney's fees and costs.[9]

On October 23, 2003, the defendant filed an objection to the plaintiff's motion for attorney's fees. Therein, it claimed that the plaintiff, in its February 19, 2003 request to the defendant to discharge the lien voluntarily, did not state that the lien should be discharged because it was invalid due to failure to serve the correct property owners, but rather, merely demanded a discharge.[10] The defendant also argued that the plaintiff's initial application to discharge the lien was brought in the name of "Niantic Realty," which never was an owner of the property, and therefore was invalid. It noted further that the reason for which the court discharged the lien differed from the reasons for which discharge

making redundant the argument concerning Greenstein and Picazio. Because the defendant already had rested its case, the court precluded it from attempting to obtain the return of service from the marshal who had served notice on the plaintiff.

[9] The total amount sought was comprised of $9735 in attorney's fees, $13.26 for certified mail charges, $1015 for expert witness fees, $178.10 for marshal's fees and $536.04 for deposition-court reporter fees. In preparing to argue the merits of the lien, the parties had engaged in substantial discovery.

[10] The plaintiff's request to discharge the lien was attached as an exhibit to the defendant's objection to the plaintiff's motion for attorney's fees.

was sought, as listed in the application. According to the defendant, the foregoing circumstances rendered the plaintiff's notice and application defective, and required that the plaintiff's motion for attorney's fees be denied. The defendant claimed additionally that the plaintiff's failure to be forthcoming as to the ownership of the property had resulted in a waste of the parties' and the court's time and resources. It noted in conclusion that to date, the plaintiff had provided no evidence to support the amount it claimed for attorney's fees and costs and, thus, they should be denied as excessive.

On October 27, 2003, a hearing was held on the plaintiff's motion for attorney's fees. At the outset of the hearing, in response to the court's question of whether he contested the amount claimed, the defendant's counsel replied that he did and that an evidentiary hearing was necessary, but also that he had "a legal argument first that may negate that."[11] He then started to argue the grounds raised in his objection, beginning with the claim that the court had discharged the lien for a reason different from those identified by the plaintiff in its request and application to discharge. At that point, the plaintiff was given the opportunity to respond and argued that because the defendant at the prior hearing had failed to establish the validity of the liens, the plaintiff never had a chance to present the arguments raised in its application to discharge. The court agreed and, without giving the defendant a chance to argue further, overruled the objection to the motion for attorney's fees.[12] The matter then was continued to give the defen-

[11] The court indicated that it had not read the defendant's objection prior to the hearing.

[12] The following colloquy ensued:

"[The Defendant's Counsel]: Well, can I just—

"The Court: I'm overruling the objection to the motion for attorney's fees. What counsel says makes absolute sense.

"[The Defendant's Counsel]: Well, there is just one—

"The Court: I don't want to hear any more. We can go on and on with this. I just think it's nonsense.

"[The Defendant's Counsel]: It's just—

dant an opportunity to examine the plaintiff's affidavit of attorney's fees, which the defendant had not received prior to the hearing.

On November 6, 2003, the defendant filed a motion to renew or reargue its objections to the plaintiff's motion for attorney's fees. It argued in the motion that the court, before ruling on whether attorney's fees were available, first had to consider whether the request for fees was timely pursuant to Practice Book § 11-21. According to the defendant, the timeliness of the plaintiff's request for attorney's fees implicated the court's subject matter jurisdiction. The defendant argued further that a showing of the plaintiff's strict statutory compliance in obtaining the lien's discharge was a prerequisite for a fee award.

The hearing on attorney's fees resumed on November 24, 2003. In response to the court's query as to what his objections were,[13] the defendant's counsel began to argue that the motion for fees was untimely under Practice Book § 11-21 and that the court lacked subject matter jurisdiction to consider it. The plaintiff's counsel interjected and argued that the cited provision was inapplicable and, in any event, nonjurisdictional, and that the defendant was making a claim that had not been raised in its prior objection.[14] The defendant's counsel then cited cases in support of the proposition that, before attorney's fees could be awarded, a hearing was

"The Court: I think it's very clear. It was dismissed. Of course, you don't get into the merits of the case if it's—the plaintiff's case is dismissed. That's the end of it."

[13] Specifically, the court asked the defendant's counsel, "[W]hat's the basis for objecting to the attorney's fees so I don't have to read your five page memorandum? . . ."

[14] We note that a claim questioning the subject matter jurisdiction of the court may be raised at any time. *Louis Gherlone Excavating, Inc.* v. *McLean Construction Co.*, 88 Conn. App. 775, 779–80, 871 A.2d 1057, cert. granted on other grounds, 274 Conn. 909, 876 A.2d 1201 (2005) (appeal withdrawn February 3, 2006).

necessary to establish that the plaintiff had given the defendant proper notice of its intent to file an application to discharge the lien. The court, refusing to take evidence, rejected summarily the defendant's argument in this regard, finding that the plaintiff had complied with the statute.[15] According to the court, the defendant was attempting improperly to reargue what had transpired at the original hearing.[16] The court denied the defendant's motion to reargue without addressing the defendant's argument concerning Practice Book § 11-21. It granted the plaintiff's motion for attorney's fees in the amount requested. This appeal followed.

We begin with the applicable standard of review. "[T]he awarding of attorney's fees under . . . § 49-51 (a) is delegated by statute to the discretion of the trial court." *Woronecki* v. *Trappe*, 228 Conn. 574, 581–82, 637 A.2d 783 (1994). Where a court has discretion to award attorney's fees, we review its decision for abuse of that discretion as to "the amount of fees awarded . . . and also [as] to [its] determination of the factual predicate justifying the award." (Citation omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252, 828 A.2d 64 (2003). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's rul-

---

[15] The court's finding, as stated in the record, makes no sense and may reflect a transcription error. Specifically, the court is recorded as stating, "I'm going to cut this short. I find he complied with the statute in serving the lien." The court's prior comments, however, seem to indicate that it considered the plaintiff's filing of the application to discharge itself to be sufficient notice to the defendant. To the extent that the court so found, its finding was clearly erroneous. See *Guilford Yacht Club Assn., Inc.* v. *Northeast Dredging, Inc.*, 192 Conn. 10, 13 n.8, 468 A.2d 1235 (1984) (in action to discharge lien pursuant to General Statutes § 49-51, "[t]he service of [the] complaint does not satisfy [the] notice requirement which is a prerequisite to the commencement of a statutory action").

[16] The defendant's counsel repeatedly contested the court's assertion, stating that he was "not trying to reargue the case [and was] only trying to reargue that part of the statute that wasn't heard prior."

ing, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Montoya* v. *Montoya*, 91 Conn. App. 407, 430–31, 881 A.2d 319, cert. granted on other grounds, 276 Conn. 916, 888 A.2d 85 (2005).

After our review of the pertinent filings and of the transcripts of the proceedings concerning attorney's fees,[17] we conclude that the court disregarded the requirements of § 49-51 and, therefore, abused its discretion in refusing to allow the defendant to present evidence concerning its objections to the plaintiff's motion for attorney's fees.

First, under the statute, an award of damages to a lienee, including reimbursement of its attorney's fees, does not flow automatically from a court's determination that the lien is invalid and should be discharged. See, e.g., *Richard Riggio & Sons, Inc.* v. *Galiette*, 46 Conn. App. 63, 698 A.2d 336, cert. denied, 243 Conn. 920, 701 A.2d 343 (1997), cert. denied sub nom. *Galiette* v. *Connecticut*, 522 U.S. 1115, 118 S. Ct. 1050, 140 L. Ed. 2d 113 (1998). Rather, such an award is discretionary, as indicated by the statutory language providing that a court "*may* award the plaintiff damages for the failure of the defendant to make discharge [of a lien] upon request." (Emphasis in original; internal quotation marks omitted.) Id., 66, quoting General Statutes § 49-51 (a). Furthermore, pursuant to the statute, an award of damages is justified only "[*i*]*f* the court is of the opinion that [the] certificate of lien was filed without just cause . . . ." (Emphasis added; internal quotation

---

[17] The court did not produce a written memorandum of decision in this matter. The defendant, however, has provided this court with transcripts of the October 27 and November 24, 2003 hearings, both of which have been signed by the trial judge. See Practice Book § 64-1.

marks omitted.) *Richard Riggio & Sons, Inc.* v. *Galiette*, supra, 66. In *Richard Riggio & Sons, Inc.*, this court upheld the trial court's decision not to award damages to a plaintiff who successfully obtained discharge of an invalid mechanic's lien, where the court found that the defendant reasonably believed that a lien waiver it had executed was ineffective. Id., 67–68.

Thus, the court here, before awarding damages, was required to make a separate determination of whether the defendant had just cause to file the certificate of mechanic's lien, even though the court already had found that lien invalid. Instead, the court improperly assumed that once it found the lien invalid, the only question remaining was the amount of damages to be awarded to the plaintiff.

Second, § 49-51 and the case law interpreting it make clear that, just as a lienor is required to show that it gave a lienee proper notice before filing a mechanic's lien in the land records, a lienee is required to show that it properly requested voluntary discharge of the lien before invoking the machinery of the court and seeking associated damages for its efforts. See *Woronecki* v. *Trappe*, supra, 228 Conn. 580 ("[n]otwithstanding the trial court's ruling as to the invalidity of the lien, [a property owner seeking damages under § 49-51], as the moving party, ha[s] the burden of proving compliance with the statutory notice requirement"); *Guilford Yacht Club Assn., Inc.* v. *Northeast Dredging, Inc.*, 192 Conn. 10, 13, 468 A.2d 1235 (1984) (describing notice requirement as an " 'essential condition' " of § 49-51 action and holding that plaintiff, "[a]s the moving party . . . had the burden of establishing compliance with this statutory requirement"); *Commissioner of Public Works* v. *Middletown*, 53 Conn. App. 438, 444, 731 A.2d 749 ("lienee normally bears the burden of establishing compliance with the notice requirement"), cert. denied, 250 Conn. 923, 738 A.2d 654 (1999).

Accordingly, to the extent that the defendant, via its objections to the plaintiff's motion for attorney's fees, sought to establish that such notice was flawed or otherwise lacking, the court's refusal to hear evidence in this regard was improper. Even absent the defendant's objections, the court, before awarding damages, should have required the plaintiff, who had the burden on this issue, to submit evidence proving its compliance with the statute.

Third, pursuant to § 49-51 (a), once the aforementioned prerequisites for awarding damages are found satisfied, the court is charged with a determination of a "reasonable attorney's fee . . . ." In determining what amount is reasonable, the plaintiff's conduct in prosecuting the action is a relevant consideration for the court. If it were determined, for example, that the plaintiff unreasonably prolonged the litigation by challenging the merits of the liens while knowingly failing to inform the defendant that they were directed to improper parties, an award of the entire amount sought may well be found unwarranted. As such, the defendant's argument that the lien was held invalid for reasons different from those identified in the plaintiff's notice and applications was pertinent to the question of damages. The court's refusal to allow the defendant to present that argument fully was an abuse of discretion.

The judgment is reversed only as to the award of attorney's fees and the case is remanded for further proceedings on the plaintiff's motion for attorney's fees.

In this opinion the other judges concurred.