******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JPMORGAN CHASE BANK, N.A. *v.*
# FRED N. DURANTE
## (AC 46512)

Elgo, Moll and Seeley, Js.

### *Syllabus*

The defendant guarantor appealed to this court from the trial court's granting of a motion for approval of trial and appellate court costs and attorney's fees filed by the plaintiff note holder pursuant to the terms of the promissory note, following judgment rendered in its favor on its breach of guarantee claim. The defendant claimed that the plaintiff's motion was not timely filed pursuant to the rule of practice (§ 11-21) governing motions for attorney's fees and was made without any showing of excusable neglect to permit the late filing. *Held*:

1. The plaintiff could not prevail on its claim that Practice Book § 11-21 did not apply to its motion for contractual attorney's fees, as opposed to statutory attorney's fees: the text of Practice Book § 11-21 makes it clear that the rule applies to attorney's fees sought postjudgment and not to those attorney's fees assessed as a component of damages, and to the extent there is ambiguity as to whether the rule governs contractual attorney's fees, the commentary to the rule and dicta in *Meadowbrook Center, Inc.* v. *Buchman* (328 Conn. 586) support this court's construction that postjudgment motions for contractual attorney's fees are subject to the rule; moreover, to the extent that the plaintiff contended that the trial court's award of attorney's fees constituted an award of damages, the plaintiff did not identify any support in the record for that proposition, it did not suggest any legal theory that could support a postjudgment award of contractual attorney's fees incurred entirely in connection with the prosecution of the plaintiff's breach of guarantee claim as damages, and the fact that the plaintiff sought attorney's fees for the first time postjudgment and following an appeal without remand readily distinguished the court's award of attorney's fees from an award of attorney's fees assessed as a component of damages, and, accordingly, Practice Book § 11-21 applied, as a matter of fact, to the plaintiff's motion, such that the motion was untimely filed.

2. The trial court abused its discretion in entertaining the plaintiff's untimely request for trial court and appellate attorney's fees: although the plaintiff argued that the fact that the clerk of the trial court did not enter the judgment or a document titled "judgment" constituted excusable neglect for its late filing of its motion for trial court attorney's fees, that contention incorrectly articulated the relevant portion of Practice Book § 11-21 by substituting the entry of judgment for the rendering of judgment, and, regardless of whether a separate document titled "judgment" was entered, there could not reasonably be any ambiguity or confusion

regarding the fact that the trial court had rendered a final judgment when it granted the plaintiff's motion for summary judgment, and the fact that the defendant took a timely appeal, in which the plaintiff participated, added further support to this conclusion; moreover, the plaintiff provided no additional reason for the untimely filing with respect to appellate attorney's fees and, because the plaintiff failed to present the trial court with any viable reason for its delay in moving for appellate attorney's fees it therefore made a legally insufficient showing to support an excusable neglect finding.

Argued March 7—officially released August 27, 2024

*Procedural History*

Action to recover damages for breach of guarantee, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Rosen, J.*, granted the plaintiff's motion for summary judgment and rendered judgment thereon, from which the defendant appealed to this court, *Moll*, *Cradle*, and *Clark, Js.*, which affirmed the judgment of the trial court; subsequently, the court, *Rosen, J.*, granted the plaintiff's motion for attorney's fees and costs, and the defendant appealed to this court. *Reversed*; *judgment directed.*

*John M. Hendele IV*, with whom, on the brief, was *Gerard N. Saggese III*, for the appellant (defendant).

*Walter J. Onacewicz*, with whom, on the brief, was *Mitchell J. Levine*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendant, Fred N. Durante, also known as Fred N. Durante, Jr., appeals from the judgment of the trial court granting the motion for approval of trial court and appellate costs and attorney's fees filed by the plaintiff, JPMorgan Chase Bank, N.A. On appeal, the defendant claims that the court improperly granted the plaintiff's motion because it was untimely under

Practice Book § 11-21[1] and was made without any show-ing of excusable neglect to permit the late filing. We agree and, accordingly, reverse the judgment of the trial court.

The following facts, which are undisputed, and proce-dural history are relevant to our resolution of this appeal. On December 9, 2019, the plaintiff commenced the present action against the defendant. In its one count second amended complaint (complaint), the plaintiff asserted one claim of breach of guarantee. In support of its claim, the plaintiff alleged in relevant part that (1) Fred N. Durante, Jr., General Contractor, Inc. (borrower), became indebted to the plaintiff on June 20, 2008, in the original principal amount of $250,000 pursuant to a promissory note evidencing a business line of credit (note), (2) the note was secured by a continuing unlimited guarantee (guarantee) executed by the defendant that same day, (3) the borrower defaulted under the terms of the note, and (4) the defen-dant failed and refused to make payment for the amounts due under the note and the guarantee.[2] The

---

[1] Practice Book § 11-21 provides: "Motions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. If appellate attorney's fees are sought, motions for such fees shall be filed with the trial court within thirty days following the date on which the Appellate Court or Supreme Court rendered its decision disposing of the underlying appeal. Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages."

[2] Copies of the note and the guarantee were attached to the complaint, each of which appended and incorporated by reference an ancillary docu-ment titled "Additional Terms" (additional terms), containing certain defini-tions of various contractual terms. The guarantee provides in relevant part: "[The defendant], as primary obligor and not merely as surety, absolutely and unconditionally guarantees to the [plaintiff] the performance of and full and prompt payment of the Indebtedness when due, whether at stated maturity, by acceleration or otherwise. The [defendant] will also reimburse [the plaintiff] for any Collection Amounts, including, without limitation, reasonable attorney['s] fees, costs and other Collection Amounts, [the plain-tiff] may pay in collecting from [the] [b]orrower or [the defendant] . . . ." The additional terms define "Indebtedness" in part as "any and all liabilities,

defendant filed an answer and special defenses on August 24, 2020.

Relevant to this appeal, on July 29, 2021, the plaintiff filed a motion for summary judgment as to the defendant's liability under the note and the guarantee and as to the plaintiff's damages in the amount of $225,803.25 (comprising the principal balance and accrued interest). Following a hearing, on January 18, 2022, the court, *Rosen, J.*, issued a memorandum of decision in which it granted the plaintiff's motion for summary judgment, stating in conclusion that "[j]udgment shall enter in favor of the plaintiff in the amount of $225,803.25."[3] The trial court's electronic case detail reflects a separate docket entry (with no corresponding separate document), with the description "Summary Judgment-Plaintiff," entered on January 18, 2022. Thereafter, the court denied, inter alia, the defendant's motion to open the judgment, whereupon the defendant appealed therefrom to this court. On February 14, 2023, this court affirmed the judgment of the trial court. See *JPMorgan Chase Bank, N.A.* v. *Durante*, 217 Conn. App. 903, 288 A.3d 689 (2023). There was no motion for reconsideration or petition for certification to appeal that followed. See Practice Book §§ 71-5 and 84-1.

Approximately six weeks later, on March 29, 2023, the plaintiff filed its motion, titled "motion for approval

---

obligations and debts of every kind and character, plus interest, costs and fees, including Collection Amounts, arising thereon, of [the] [b]orrower, or any one of them, to [the plaintiff] . . . ." The additional terms define "Collection Amounts" in relevant part as "any fees, charges, costs and expenses, including reasonable [attorney's] fees (including fees and expenses of counsel for [the plaintiff] that are employees of [the plaintiff] or its affiliates, to the extent not prohibited by law) and court costs, that [the plaintiff] may pay in collecting from [the borrower or the defendant] . . . ."

[3] We note that, in its memorandum of decision, the court also stated, inter alia: "At oral argument [on the plaintiff's motion for summary judgment], the plaintiff waived any claim to costs, attorney's fees or additional interest." Because the defendant has not raised the issue of waiver in the present appeal, we do not address it further.

of costs and attorney's fees." In its motion, the plaintiff represented that (1) the court's memorandum of decision granting the motion for summary judgment "stated that '[j]udgment shall enter in favor of the plaintiff in the amount of $225,803.25,' " (2) the note "provides for reasonable attorney['s] fees and court costs," and (3) it had incurred "$25,360 [in] attorney's fees and $495.78 [in] court costs . . . ." In support of its motion, the plaintiff appended a bill of costs and an affidavit of its counsel, Walter Onacewicz, with accompanying exhibits, including invoices detailing its attorney's fees and costs.

On April 13, 2023, the defendant filed a memorandum in opposition to the plaintiff's motion. The defendant argued therein that the motion (1) was untimely under Practice Book § 11-21 and (2) alternatively, even if timely, (a) sought relief under the note against the wrong party and (b) otherwise was not supported by evidence sufficient to justify awarding the plaintiff its attorney's fees and costs relating to the litigation. On April 19, 2023, the plaintiff filed a reply memorandum, accompanied by an amended affidavit of its counsel that more fully described the legal services rendered. In its reply memorandum, the plaintiff argued, with respect to the timeliness of the motion, that § 11-21 applies only to motions for statutory (and not contractual) attorney's fees and that, therefore, the rule did not apply to its motion so as to render it untimely. The plaintiff argued alternatively that, even if § 11-21 were applicable, its motion was properly before the court because the fact that "the clerk of the court has not yet entered the judgment or any document [titled] '[j]udgment' " constituted excusable neglect and, therefore, the court properly exercised its discretion and permitted the motion. See *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 606, 181 A.3d 550 (2018) (adopting excusable neglect test, reviewed under abuse

of discretion standard, to permit untimely filing pursuant to § 11-21).

On April 24, 2023, the court held a hearing on the plaintiff's motion. On April 25, 2023, the court granted the plaintiff's motion, stating simply that "[t]he plaintiff established that it is entitled to costs of collection, including reasonable attorney's fees, in the amount of $25,360, plus costs of $495.78, for a total of $25,855.78." This appeal followed. Additional procedural history will be set forth as necessary.

On appeal, the defendant claims that the trial court erred in granting the plaintiff's motion because it was untimely pursuant to Practice Book § 11-21. Specifically, the defendant claims that the plaintiff was required under § 11-21 to file a motion for (1) its trial court attorney's fees within thirty days following the court's January 18, 2022 decision on its motion for summary judgment (i.e., on or before February 17, 2022) and (2) its appellate attorney's fees within thirty days following this court's February 14, 2023 decision in the defendant's prior appeal (i.e., on or before March 16, 2023). Thus, the defendant argues, the plaintiff's motion, filed on March 29, 2023, was untimely with respect to both trial court and appellate attorney's fees. The defendant further argues that the plaintiff did not demonstrate excusable neglect to permit the late filing. See *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 606. The plaintiff counters that § 11-21 applies only to motions for statutory attorney's fees and not contractual attorney's fees, as here. Alternatively, the plaintiff argues that, even if § 11-21 applies, it demonstrated excusable neglect, such that the court properly exercised its discretion to permit the late filing. We agree with the defendant and address his claim in two parts.

I

We must first consider the threshold issue of whether Practice Book § 11-21 applies to the plaintiff's motion. The defendant argues that § 11-21 does apply, thereby rendering the plaintiff's motion untimely, because the rule (1) may encompass postjudgment motions for contractual attorney's fees, as stated by our Supreme Court in *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 603 n.8, and (2) does not exempt the attorney's fees awarded here. The plaintiff argues, to the contrary, that the rule does not apply to the plaintiff's motion "for contractual attorney's fees awarded as damages." We agree with the defendant.

We begin with the standard of review. "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation. . . . The interpretation and application of a statute, and thus a Practice Book provision, involves a question of law over which our review is plenary. . . . In seeking to determine [the] meaning [of a statute or a rule of practice, we] . . . first . . . consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]. . . . If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence . . . shall not be considered. . . . When [the provision] is not plain and unambiguous, we also look for interpretive guidance to the . . . history and circumstances surrounding its enactment, to the . . . policy it was designed to implement, and to its relationship to existing [provisions] and common law principles governing the same general subject matter . . . . We recognize that terms [used] are to be assigned their ordinary meaning, unless context dictates otherwise. . . . Put differently, we follow the clear meaning of unambiguous rules, because [a]lthough we are directed

to interpret liberally the rules of practice, that liberal construction applies only to situations in which a strict adherence to them [will] work surprise or injustice." (Citations omitted; internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 594–95.

We now consider the text of Practice Book § 11-21, which provides: "Motions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was rendered. If appellate attorney's fees are sought, motions for such fees shall be filed with the trial court within thirty days following the date on which the Appellate Court or Supreme Court rendered its decision disposing of the underlying appeal. Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages."

As a textual matter, we observe that the rule clearly distinguishes between (1) attorney's fees sought postjudgment (i.e., those sought after the final judgment rendered by the trial court and/or those sought after a decision by one of our reviewing courts disposing of the appeal) and (2) those attorney's fees "assessed as a component of damages," which we construe to mean attorney's fees awarded as part of the original judgment or those permitted as damages on remand following an appeal. By making this distinction, the rule brings within its scope the former and excludes the latter. See *Mangiante* v. *Niemiec*, 98 Conn. App. 567, 576, 910 A.2d 235 (2006) ("[t]he time limits of Practice Book § 11-21 do not apply to a trial court's award of attorney's fees as damages"). With regard to the former, however, the rule makes no attempt to distinguish between postjudgment attorney's fees sought pursuant to statute and those sought pursuant to contract. Section 11-21 requires simply that any motion requesting (1) an award of trial court attorney's fees be filed "within thirty days following the

date on which the final judgment of the trial court was rendered," and (2) an award of appellate attorney's fees be filed "within thirty days following the date on which the Appellate Court or Supreme Court rendered its decision disposing of the underlying appeal." In this way, the language of the rule provides a strong indication that it is intended to capture both sources. Because the rule does not clearly state this intention, however, we recognize that an ambiguity exists with respect to it.

Accordingly, to the extent there is ambiguity as to the reach of Practice Book § 11-21, such that we may consider extratextual evidence for interpretive guidance, we now turn to the official commentary to § 11-21, set forth in the 1999 revision of the Practice Book.[4] In doing so, we recognize that "[w]e do not place the same weight on commentaries as we would place on expressed rules." *Henry* v. *Statewide Grievance Committee*, 111 Conn. App. 12, 20, 957 A.2d 547 (2008); see also id. ("[c]ommentaries are routinely used for purposes of persuasive consideration, to guide or assist the court as to the meaning of a rule or statute or for instructive guidance to analyze an issue further"). Nevertheless, the commentary supports our construction that postjudgment motions for *contractual* attorney's fees are subject to the rule. The official commentary to § 11-21 provides in relevant part that the rule "limits the time period within which postjudgment

---

[4] The explanatory notes section in the 1999 Practice Book provides in pertinent part: "The Commentaries were prepared by the drafters of proposed amendments to the rules and are included in this volume for informational purposes only. *Commentaries are <u>not</u> adopted by the Judges and Justices when they vote to adopt proposed rule changes. . . .*" (Emphasis in original.) Practice Book (1999), explanatory notes, p. v.

We note that this explanatory note relates only to commentary to the rules of practice and not commentary to the Rules of Professional Conduct. See *Cohen* v. *Statewide Grievance Committee*, 339 Conn. 503, 513–14, 261 A.3d 722 (2021) (unlike with respect to rules of practice, judges of Superior Court have formally adopted commentary to Rules of Professional Conduct).

motions for [attorney's] fees may be filed and is aimed principally at statutory [attorney's] fees but, where appropriate, *may be applied in situations where [attorney's] fees are founded upon an enforceable provision in a contract. . . .*" (Emphasis added.) Practice Book (1999) § 11-21, commentary.

Finally, we observe that, consistent with our conclusion herein, in *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 603 n.8, our Supreme Court stated, albeit in dicta,[5] that it is "[accurate] . . . that [Practice Book] § 11-21 applies to motions for attorney's fees that are authorized by contract as well as statute . . . ." See also id., 603 (court applied particular factor under *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 764, 104 A.3d 713 (2014), in manner to avoid construction of § 11-21 "that would permit a relatively minor or nonprejudicial delay in filing to divest a party of a right granted *by contract* or statute" (emphasis added)).

In support of its argument that Practice Book § 11-21 does not apply to its motion, the plaintiff relies on the final sentence of the rule: "Nothing in this section shall be deemed to affect an award of attorney's fees assessed as a component of damages." In so doing, the plaintiff cursorily contends that the trial court's award of attorney's fees in the present action constituted an award of damages. This contention fails.

First, the plaintiff has not identified any support in the record for the proposition that the court's award of contractual attorney's fees was an award of *damages*.

---

[5] Although *Meadowbrook Center, Inc.*, involved the application of Practice Book § 11-21 to a motion for *statutory* attorney's fees; see *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 588; we look to the court's statement on the question before us as persuasive authority. See *Voris* v. *Molinaro*, 302 Conn. 791, 797 n.6, 31 A.3d 363 (2011) ("[a]lthough dicta is not binding precedent . . . we may look to dicta as persuasive authority" (citation omitted)).

Indeed, the record reflects that, when the court rendered summary judgment in favor of the plaintiff on its one count complaint for breach of guarantee, it awarded damages in the amount of $225,803.25, which exclusively comprised the principal balance under the note and accrued interest. This court subsequently affirmed the judgment, in a memorandum decision, without remand. See *JPMorgan Chase Bank, N.A.* v. *Durante*, supra, 217 Conn. App. 903.

Second, the plaintiff also has not suggested any legal theory, and we cannot conceive of any, that could support a *postjudgment* award of contractual attorney's fees—incurred entirely in connection with the prosecution of the plaintiff's breach of guarantee claim—as damages. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Internal quotation marks omitted.) *Bruno* v. *Whipple*, 215 Conn. App. 478, 492–93, 283 A.3d 26 (2022). Under the American rule, it is generally presumed that attorney's fees and costs do not constitute damages. See *Summit Valley Industries, Inc.* v. *Local 112, United Brotherhood of Carpenters & Joiners of America*, 456 U.S. 717, 722–23, 102 S. Ct. 2112, 72 L. Ed. 2d 511 (1982); see also *In re Nalle Plastics Family Ltd. Partnership*, 406 S.W.3d 168, 173 (Tex. 2013) ("While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make a claimant whole, they are not, and have never been, damages. Not every amount, even if compensatory, can be considered damages. Like attorney's fees, court costs

make a claimant whole, as does [prejudgment] interest. Yet it is clear that neither costs nor interest qualify as compensatory damages."); cf. 22 Am. Jur. 2d 416, Damages § 450 (2023) ("[L]itigation costs incurred by a party in separate litigation may sometimes be an appropriate measure of compensatory damages against another party. Such recovery is ordinarily allowed as an item of damage flowing from the present defendant's wrongful act and not specifically as attorney's fees." (Footnote omitted.)).

In the present action, the attorney's fees at issue were incurred entirely in connection with the prosecution of the plaintiff's breach of guarantee claim and, thus, do not constitute damages. Moreover, the fact that the plaintiff sought attorney's fees for the first time *post-judgment and following an appeal without remand* readily distinguishes the court's award of attorney's fees here from "an award of attorney's fees assessed as a component of damages" (to which Practice Book § 11-21 does not apply). That is, awards of attorney's fees captured by the exemption set forth in Practice Book § 11-21 include, by way of example only, (1) attorney's fees explicitly awarded as common-law punitive damages; see *Palmieri* v. *Cirino*, 226 Conn. App. 431, 441,    A.3d    (2024); (2) attorney's fees awarded as damages pursuant to the trial court's equitable authority; see *Mangiante* v. *Niemiec*, supra, 98 Conn. App. 576–77 (citing 1 D. Dobbs, Remedies (2d Ed. 1973) § 3.10 (3), p. 402); (3) attorney's fees awarded in connection with a plaintiff's successful application for the discharge of a mechanic's lien pursuant to General Statutes § 49-51 (a), which "clearly contemplates those fees as a component of damages"; *Torrance Family Ltd. Partnership* v. *Laser Contracting, LLC*, 94 Conn. App. 526, 528 n.1, 893 A.2d 460 (2006); and (4) attorney's fees awarded as compensatory damages for common-law

vexatious litigation; *Vandersluis* v. *Weil*, 176 Conn. 353, 360, 407 A.2d 982 (1978).

We conclude, on the basis of our analysis of Practice Book § 11-21, the commentary to the rule, and the clear statement by our Supreme Court in *Meadowbrook Center, Inc.*, that § 11-21 may apply, as a matter of law, to postjudgment motions for attorney's fees sought pursuant to contract and that § 11-21 does apply, as a matter of fact, to the plaintiff's motion, such that it was untimely filed.[6]

## II

Having concluded that Practice Book § 11-21 applies to the plaintiff's motion, we turn to the defendant's claim that the court abused its discretion in entertaining the late filing. The defendant argues that the plaintiff did not satisfy the excusable neglect standard, adopted in *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 606, to permit the trial court to entertain the late filing. In response, the plaintiff contends that the lack of an entry of a separate document titled "judgment" following the court's summary judgment decision created confusion and constituted excusable neglect to justify the late filing with respect to its request for both trial court and appellate attorney's fees. We agree with the defendant.

Before reaching the defendant's claim on the merits, we briefly address the applicable standard of review.

---

[6] That is, because the plaintiff's motion was filed on March 29, 2023, it was not filed, with respect to its request for trial court attorney's fees, "within thirty days following the date on which the final judgment of the trial court was rendered" (i.e., on or before February 17, 2022, following the court's January 18, 2022 decision on the plaintiff's motion for summary judgment). Practice Book § 11-21. Moreover, with respect to the plaintiff's request for appellate attorney's fees, the motion was not filed "within thirty days following the date on which the Appellate Court . . . rendered its decision disposing of the underlying appeal" (i.e., on or before March 16, 2023, following this court's February 14, 2023 decision disposing of the defendant's prior appeal). Practice Book § 11-21.

The court's acceptance of the late filing of the plaintiff's motion under the excusable neglect standard is reviewed for abuse of discretion. See *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 606. Although Practice Book § 11-21 requires that parties file motions for attorney's fees within thirty days following the date on which (1) the trial court rendered its final judgment or (2) this court or our Supreme Court rendered its decision disposing of the underlying appeal, as applicable, "§ 11-21 is directory and, therefore, affords the trial court discretion to entertain untimely motions for attorney's fees in appropriate cases." Id., 604.

In exercising its discretion in determining whether to allow an untimely filing pursuant to Practice Book § 11-21, a trial court employs the "excusable neglect" standard. This standard is "an elastic concept, which implies a determination that is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission . . . . Factors to be considered in evaluating excusable neglect include [1] the danger of prejudice to the [nonmovant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." (Internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, supra, 328 Conn. 606; see also id. (adopting four factor balancing test to assess excusable neglect—set forth in *Pioneer Investment Services Co.* v. *Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 385, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993) (*Pioneer*), and widely used by federal courts—because it is consistent with existing Connecticut case law governing trial court's exercise of its discretion in determining whether to entertain untimely filing).

We note that, in granting the plaintiff's motion, the court did not expressly make any excusable neglect findings to permit the untimely filing. Although we do not presume error on the part of the court; see *State* v. *James K.*, 209 Conn. App. 441, 465, 267 A.3d 858 (2021) ("the burden rests with the appellant to demonstrate reversible error" (internal quotation marks omitted)), aff'd, 347 Conn. 648, 299 A.3d 243 (2023); we are compelled to conclude, on this record, that the court's consideration of the plaintiff's late motion constituted an abuse of its discretion. For ease of analysis, although the plaintiff's requests for trial court and appellate attorney's fees were embedded in the same motion, we address them separately in light of the different timing requirements set forth in Practice Book § 11-21.

A

We first address the defendant's claim that the court abused its discretion in entertaining the plaintiff's request for trial court attorney's fees because no excusable neglect permitted the late filing. We agree with the defendant.

The following additional procedural history is relevant to our resolution of this portion of the defendant's claim. During the April 24, 2023 hearing on the plaintiff's motion, with respect to the excusable neglect question, the plaintiff exclusively relied on the fact that, when the court granted its motion for summary judgment and stated in conclusion that "[j]udgment shall enter in favor of the plaintiff in the amount of $225,803.25," no separate document titled "[j]udgment" was "entered" on the docket. The plaintiff maintains this position on appeal.

As many federal courts do, we focus our attention on the third excusable neglect factor (i.e., the reason for the delay, including whether it was within the reasonable control of the movant). See *Silivanch* v. *Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), cert.

denied, 540 U.S. 1105, 124 S. Ct. 1047, 157 L. Ed. 2d 890 (2004); see also *Graphic Communications International Union, Local 12–N* v. *Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) ("Although the *Pioneer* standard is more forgiving than the standard in our prior case law, there still must be a satisfactory explanation for the late filing. . . . [T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a [close] case, the reason-for-delay factor will always be critical to the inquiry . . . ." (Internal quotation marks omitted.)). For the reasons that follow, we conclude that the plaintiff's proffered reason fails, as a matter of law, to satisfy the excusable neglect standard.

With respect to trial court attorney's fees, Practice Book § 11-21 provides in relevant part that "[m]otions for attorney's fees shall be filed with the trial court within thirty days following the date on which the final judgment of the trial court was *rendered*. . . ." (Emphasis added.) The fundamental flaw with the plaintiff's contention is that it incorrectly articulates the relevant portion of § 11-21 by substituting the *entry* of judgment for the *rendering* of judgment. Simply put, the plaintiff's substitution of "entered" for "rendered" in this context is legally incorrect.

When the rules of practice do not define a term, "we look to the commonly approved meaning of the word as defined in the dictionary." *State* v. *Tutson*, 278 Conn. 715, 732, 899 A.2d 598 (2006). Black's Law Dictionary defines "[r]ender judgment" as follows: "To pronounce, state, declare, or announce the judgment of the court in a given case or on a given state of facts; not used with reference to judgments by confession, and *not synonymous with 'entering,'* 'docketing,' or 'recording' *the judgment*. Judgment is 'rendered' when decision is

officially announced, either orally in open court or by memorandum filed with clerk." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990) p. 1296. "Rendition of judgment" is defined in relevant part as follows: "Rendition of a judgment is effected when [the] trial court in open court declares the decision of the law upon the matters at issue, and *it is distinguishable from 'entry of judgment,'* which is a purely ministerial act by which the judgment is made of record and preserved. . . . A judgment is rendered as of [the] date on which [the] trial judge declares in open court his decision on matters submitted to him for adjudication, and oral pronouncement by the court of its decision is sufficient for 'rendition of judgment.' . . . It is the pronouncement of the court of its conclusions and decision upon the matter submitted to it for adjudication; a judgment may be rendered either orally in open court or by memorandum filed with the clerk. . . . *'Rendition' of judgment is distinguishable from its 'entry' in the records. . . .*" (Citations omitted; emphasis added.) Id. Finally, "[e]ntering judgments" is defined in relevant part as follows: "*Entry of judgment differs from rendition of judgment. 'Rendition' of a judgment is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy.* The 'entry' is a ministerial act, which consists in entering upon the record a statement of the final conclusion reached by the court in the matter, thus furnishing external and incontestable evidence of the sentence given, and designed to stand as a perpetual memorial of its action." (Emphasis added.) Id., p. 476.

In the present case, regardless of whether a separate document titled "judgment" was *entered*, there could not reasonably be any ambiguity or confusion regarding the fact that the trial court had rendered a final judgment when it granted the plaintiff's motion for summary judgment. The fact that the defendant took a timely

appeal, in which the plaintiff participated, buttresses the point. See Practice Book § 61-1 ("[a]n aggrieved party may appeal from a *final judgment*, except as otherwise provided by law" (emphasis added)); Practice Book § 61-2 ("[w]hen judgment has been rendered on an entire complaint . . . whether by . . . summary judgment pursuant to [Practice Book §] 17-44, or otherwise, such judgment shall constitute a final judgment"). It necessarily follows that there could be no ambiguity or confusion in the present case as to "the date on which the final judgment of the trial court was *rendered*"; (emphasis added); i.e., the date that triggered the thirty day period for the plaintiff to file a motion for trial court attorney's fees under Practice Book § 11-21. Simply put, we conclude, as a matter of law, that counsel's misapplication of the plain language of Practice Book § 11-21 cannot constitute excusable neglect so as to cure the failure to comply with its timing requirements. See *Silivanch* v. *Celebrity Cruises, Inc.*, supra, 333 F.3d 369–70 (collecting cases).

In sum, the plaintiff's delay of more than one year in requesting its trial court attorney's fees on the sole purported ground that no judgment had "entered" in the trial court fails as a matter of law to satisfy the excusable neglect standard. Thus, the trial court abused its discretion in entertaining the motion.

B

We next address the defendant's claim that the court abused its discretion in awarding the plaintiff its appellate attorney's fees because no excusable neglect permitted the late filing. We agree with the defendant.

The following additional procedural history is relevant to our resolution of this claim. This court rendered its decision disposing of the defendant's prior appeal on February 14, 2023, and no motion for reconsideration or petition for certification to appeal followed. More

than six weeks later, the plaintiff filed its motion containing its request for appellate attorney's fees. Before the trial court, the plaintiff provided no reason for the untimely filing with respect to appellate attorney's fees other than the proffered excuse discussed in part II A of this opinion. During oral argument before this court, the plaintiff's counsel represented for the first time that the reason for the delay in requesting appellate attorney's fees following the release of this court's decision resulted from "[computer] problems with the billing."

We again focus our attention on the third excusable neglect factor (i.e., the reason for the delay, including whether it was within the reasonable control of the movant). With respect to the sole reason presented to the trial court for the delayed filing, we reject it as a matter of law for the same reasons explained in part II A of this opinion. With respect to the reason stated for the first time during oral argument before this court, we do not consider this proffer, as it was not presented to the trial court. See *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 328 n.20, 71 A.3d 492 (2013) ("it is well settled that arguments cannot be raised for the first time at oral argument"). Because the plaintiff failed to present the trial court with any viable reason for its delay in moving for appellate attorney's fees, and therefore made a legally insufficient showing to support an excusable neglect finding, we conclude that the court abused its discretion in considering the late filing.

The judgment is reversed and the case is remanded with direction to deny the plaintiff's motion for approval of costs and attorney's fees.

In this opinion the other judges concurred.